(77 N. W. Rep. 1000.)

---

ARTHUR F. TURNER *vs.* H. H. ST. JOHN, *et al.*

Opinion filed December 28, 1898.

**Foreclosure of Mechanics' Lien—Trial De Novo.**

Evidence relating to certain disputed payments considered, and amount due plaintiff determined, upon a trial de novo in this Court in a mechanic's lien foreclosure case.

**Note Not Given as Payment.**

A certain note transaction considered and construed. *Held* to constitute neither payment to, nor the giving of collateral security to, the lien claimant.

**Account Upon Which Lien is Based Sufficient.**

An account filed to perpetuate a mechanic's lien, under section 5476, Comp Laws, which shows upon its face, the separate charges for three separate contracts, also separate charges for extras and alterations, preceded by a statement of what each is for, followed by a total credit for cash paid and 'statement of balance due, is sufficiently explicit to comply with the above section.

**Mistake in Amount of Account Will Not Defeat Lien.**

Where it appears that the account filed was for an amount more than was due, but it also appears that it was so filed as a result of an honest mistake of fact and in an honest belief in its correctness, the lien is not lost.

**Mechanics' Lien for Construction of Passenger Elevator.**

An account filed under section 5476, Comp. Laws, to secure a mechanic's lien for a balance due for the erection of a passenger elevator at a fixed total price, which shows such contract price, with a full description of the elevator built, with a statement of the balance due after allowing all credits, is sufficient.

**Jurat to Affidavit Supplied by Proof Aliunde.**

An account in writing, and properly sworn to and filed, under section 5476, Comp. Laws, is not rendered a nullity by reason of the

omission of the jurat, and the fact that the affidavit was properly made by the affiant may be shown by evidence aliunde.

### Jurat Not Necessary to Validity of Affidavit for Lien.

The affidavit required by section 5476, Comp. Laws, construed. *Held* not to require the jurat to give it validity, and distinguished from affidavits primarily intended for evidence or as the basis of creating a right or duty in a public officer to act.

### Priority of Mechanics' Lien Over Mortgage.

A mechanic's lien for the erection of a passenger elevator is superior to the liens of mortgages on the same property taken during the progress of the construction of the building. Haxton Heater Co. v. Gordon, 50 N. W. Rep. 708, 2 N. D. 246, followed.

### Priority of Conflicting Interests Adjusted.

Priority of conflicting interests in the same property determined, and foreclosure decreed in accordance with such determination.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Action by Arthur F. Turner against H. H. St. John, The Security Trust Company, Lester F. Thurber, as assignee of the Security Trust Company, The Guaranty Savings Bank of Manchester, New Hampshire, the Grand Forks Investment Company, the J. W. Reedy Elevator Manufacturing Company, and others, defendants, for the foreclosure of a mechanic's lien upon the "St. John Block" in the City of Grand Forks, N. D. Plaintiff had judgment establishing his lien for the sum of $7,858.25 and interest from January 3, 1892, as a first lien, and directing a sale of the property to satisfy the sum so found due. Plaintiff's claim to the amount of two thousand dollars was disallowed and not included in said judgment. Plaintiff, Arthur F. Turner, appealed from that portion of the judgment disallowing two thousand dollars of his account. The defendants, Lester F. Thurber, assignee of the Security Trust Company, The Guaranty Savings Bank of Manchester, New Hampshire, and the Grand Forks Investment Company, severally perfected appeals from the judgment in favor of plaintiff. The J. W. Reedy Elevator Manufacturing Company appealed from the judgment, declaring its account for lien insufficient and void. Case tried de novo upon the evidence taken below, and judgment ordered for the plaintiff establishing his claim for lien for full amount. The rights and priorities of all parties adjusted.

*Templeton & Rex,* for appellants, Lester F. Thurber, assignee of the Security Trust Company, The Grand Forks Investment Company, and the Guaranty Savings Bank of Manchester, N. H.

Appellants alleged payment in full. This was sufficient to justify the introduction of evidence showing that plaintiff owed office rent which he had agreed should be applied on the lien debt. *Fall* v. *Johnson,* 8 S. D. 163, 65 N. W. Rep. 909; *Bush* v. *Sproat,* 43 Ark. 416; *Farmers' Bank* v. *Sherman,* 33 N. Y. 69. The agreements of Clifford and the Grand Forks Investment Company to protect plaintiff against the notes given for moneys advanced,

amounted to collateral security and a waiver of any right to a mechanic's lien. § 5468 Comp. Laws; *Harrison* v. *Council Bluffs,* 25 Fed. Rep. 170; S. C. 33 Fed. Rep. 132; *Bissel* v. *Lewis,* 56 Ia. 231, 9 N. W. Rep. 177; *Hale* v. *Ry. Co.* 13 Fed. Rep. 204; *Croskey* v. *Carey,* 48 Ill. 442; *Kinzey* v. *Thomas,* 28 Ill. 502; *E. P. Allis Co.* v. *Madison,* 9 S. D. 459; S. C. 70 N. W. Rep. 650. Plaintiff's lien statement was insufficient in that it contained no itemized statement of account. *Red River Lumber Co.* v. *Congregation, etc.,* 7 N. D. 46, 73 N. W. Rep. 203; *Rude* v. *Mitchell,* 11 S. W. Rep. 225; *Valentine* v. *Ranson,* 10 N. W. Rep. 338. Plaintiff overstated the amount due him in his lien statement, this vitiates his lien. *Gibbs* v. *Hanchette,* 90 Mich. 657, 51 N. W. Rep. 691; *Stubbs* v. *Clarinda,* 22 N. W. Rep. 654; *Scheibner* v. *Cohen,* 65 N. W. Rep. 760; *Hannah & Lay Co.* v. *Mosser,* 105 Mich. 18, 62 N. W. Rep. 1120; *Nicolai Bros.* v. *Van Fridagh,* 31 Pac. Rep. 288; *Lynch* v. *Cronan,* 6 Gray 531; *Hoffman* v. *Walton,* 36 Mo. 613; *Kling* v. *Construction Co.,* 7 Mo. App. 410; *Foster* v. *Schneider,* 2 N. Y. Supp. 875; *Reeve* v. *Elmendorf,* 38 N. J. L. 125.

*Burke Corbet,* for appellant, the J. W. Reedy Elevator Manufacturing Company.

This appellant's lien existed and was in full force without any statement account or claim being filed with the clerk of the District Court. §§ 5469, 5476 Comp. Laws; §§ 4788, 4791, Rev. Codes; *Anderson* v. *Seamens,* 49 Ark. 475, 5 S. W. Rep. 799; *Berndt* v. *Arnkneckt,* 50 Ill. App. 467; *Nielson* v. *Iowa Eastern R. Co.,* 51 Ia. 184, 1 N. W. Rep. 434; *Doolittle* v. *Plenz,* 16 Neb. 153, 20 N. W. Rep. 116; *Hoskens* v. *Carter,* 24 N. W. Rep. 249; *Curtes* v. *Broadwell,* 24 N. W. Rep. 265; *Noell* v. *Temple,* 12 Ia. 276; *Kidd* v. *Wilson,* 23 Ia. 464; *Evans* v. *Tripp,* 35 Ia. 371; *Hill* v. *Building Co.,* 6 S. D. 160, 60 N. W. Rep. 752; *Wisconsin Trust Co.* v. *Robinson & Cary,* 68 Fed. Rep. 778; *Kohn* v. *Hager,* 30 Ark. 28; *Bissell* v. *Lewis,* 9 N. W. Rep. 177; *Chicago, etc.* v. *Des Moines,* 65 N. W. Rep. 1017; *Lumber Co.* v. *Bowman,* 42 N. W. Rep. 557; *Lee* v. *Hoyt,* 70 N. W. Rep. 95; *Hoppes* v. *Baie,* 75 N. W. Rep. 495; *Whittier* v. *Blakely,* 11 Pac. Rep. 305. Appellant's lien was good as against all defendants in this case because their rights accrued before the expiration of ninety days from the completion of the building or the elevator and subsequent to the commencement of the building. § 5478 Comp. Laws; § 4793 Rev. Codes; *Haxton Steam Heater Co.* v. *Gordon,* 2 N. D. 246, 50 N. W. Rep. 708. Under the statute of this state and of Iowa, from which it was taken, a failure to file the lien statement does not defeat the lien except as to purchasers and incumbrancers. *Noel* v. *Temple,* 12 Ia. 276; *Kidd* v. *Wilson,* 23 Ia. 464; *Neilson* v. *Ry. Co.,* 51 Ia. 184, 1 N. W. Rep. 434; *Bissell* v. *Lewis,* 9 N. W. Rep. 177; *Evans* v. *Tripp,* 35 Ia. 371. As between the parties to the contract the filing of a statement for a lien not being necessary to create a lien. *Peatman* v. *Power Co.,* 64 N. W. Rep. 689; *Lee* v. *Hoyt,* 70 N. W. Rep. 95; *Chicago L. Co.* v. *Des Moines,*

65 N. W. Rep. 1017. Therefore the filing of an erroneous statement will not necessarily defeat the right of the contractor to a lien. *Ewing* v. *Stockwell,* 75 N. W. Rep. 657; *Hill* v. *Building Co.,* 6 S. D. 160, 60 N. W. Rep. 752; *Parker* v. *Randolph,* 59 N. W. Rep. 722; *Wisconsin Trust Co.* v. *Robinson & Carey,* 68 Fed. Rep. 779; *Sarles* v. *Sharlow,* 5 Dak. 100, 37 N. W. Rep. 748. Appellant's account and claim for lien,. while in some respects irregular, is not fatally defective. *Howe* v. *Smith,* 6 N. D. 432, 71 N. W. Rep. 552; *White Lake L. Co.* v. *Russell,* 3 Am. St. Rep. 262, 22 Neb. 126; *Laird Norton & Co.* v. *Hopkins,* 6 S. D. 217, 60 N. W. Rep. 857; *Evans* v. *Sanford,* 65 Minn. 271; *Drexel* v. *Richards,* 70 N. W. Rep. 23; *Cary* v. *McCarty,* 50 Pac. Rep. 745. The want of jurat upon this appellant's lien affidavit, when the claim was in fact sworn to, does not defeat its lien. The jurat may be amended. *Jackman* v. *City,* 143 Mass. 380, 9 N. E. Rep. 740; *Hitchings* v. *Ellis,* 1 Allen 175; *Hunter* v. *La Conte,* 6 Cow. 728; *People* v. *Rensselaer,* 6 Wend. 543; *McKinney* v. *Wilson,* 133 Mass. 131; *Bennett* v. *Paine,* 7 Watts, 334; *Laswell* v. *Presbyterian Church,* 46 Mo. 279; *Pottsvill* v. *Curry,* 32 Pa. St. 443; *Peterson* v. *Fowler,* 43 N. W. Rep. 10; *Fortenheim* v. *Clafin,* 47 Ark. 49, 14 S. W. Rep. 462; *Wiley* v. *Bennett,* 9 Baxt. 581; *Stout* v. *Folger,* 34 Ia. 71; *Kruse* v. *Wilson,* 79 Ill. 233; *Bergsch* v. *Keevil,* 19 Mo. 127; *Ainslee* v. *Kohn,* 16 Ore. 363, 19 Pac. Rep. 97; *Cook* v. *Jenkins,* 30 Ia. 432; *Heffernon* v. *Harvey,* 24 S. E. Rep. 592; *Fidelity Ins. Co.* v. *Roanoke Iron Co.,* 81 Fed. Rep. 440; *Bickerdike* v. *Allen,* 157 Ill. 95, 41 N. E. Rep. 740; *Cox* v. *Stern,* 48 N. E. Rep. 906; *Williams* v. *Stevenson,* 103 Ind. 243, 2 N. E. Rep. 728. The omission of a jurat and irregularities therein are cured by a recital in the body of the instrument to the effect, as in this case, that the affiant was sworn. *Jackman* v. *Gloucester,* 143 Mass. 380, 9 N. E. Rep. 740; *Bandy* v. *Ry. Co.,* 33 Minn. 380; *Pottsville* v. *Curry,* 32 Pa. St. 442; *Fortenheim* v. *Claflin,* 14 S. W. Rep. 462; *Beckerdike* v. *Allen,* 41 N. E. Rep. 740. This appellant upon the trial filed a new and corrected affidavit and account for lien. The lien may be filed after suit brought. *Whittier* v. *Blakely,* 13 Ore. 546, 11 Pac. Rep. 305. The provisions of the Revised Codes do not repeal the lien law under which this lien was filed. The provisions of the new are so nearly indentical with those of the old enactments in relation to mechanics' liens as to amount to a continuation thereof. *Gull River Lumber Co.* v. *Lee,* 7 N. D. 135, 73 N. W. Rep. 430; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Wright* v. *Oakley,* 5 Metc. 406. An unconditional repeal of the former statute without any express reservation of rights existing or accrued thereunder would not justify a construction that such rights expired with the statute. *Christman* v. *Carleville,* 36 Mo. 610; *Winter* v. *Dickerson,* 42 Ala. 92; *Weaver* v. *Silk,* 10 Kan. 619; *Warren* v. *Woodward,* 70 N. C. 382; *In re Hope Mining Co.,* 1 Sawyer, 710; Fed. Cases No. 6681 *Strembel* v. *Ry. Co.,* 12 Wis. 67; *Hallahan* v. *Herbert,* 11 Abb. Pr. N. S.

326; *Chowning* v. *Barnett,* 30 Ark. 560; *Handel* v. *Elliott,* 60 Tex. 145; *State* v. *Moorehouse,* 5 N. D. 406, 67 N. W. Rep. 140.

*Templeton & Rex,* for the Guaranty Savings Bank, et al., in reply to brief of the J. W. Reedy Elevator Manufacturing Co.

The decision of the South Dakota Court, *Hill* v. *Alliance Building Co.,* 6 S. D. 160, 60 N. W. Rep. 752, is clearly unsound. The Court wholly overlooked or misconstrued portions of the statute. §§ 5469, 5476, 5477, 5478, 5481 and 5484, Comp. Laws. It is essential that the lien claimant make and file his statement in strict compliance with the statute, both as against persons with, and those without notice. *Brooks* v. *Burlington & S. Ry. Co.,* 101 U. S. 443. *Campbell* v. *Jacobson,* 145 Ill. 389, 34 N. E. Rep. 39; *Von Tobel* v. *Ostander,* 42 N. E. Rep. 152. The right to the lien bring purely statutory, the statute must be substantially complied with in all respects. *Osborn* v. *Co.,* 13 So. Rep. 776; *McGillivary* v. *District,* 65 N. W. Rep. 974; *Alfree Mfg. Co.* v. *Henry,* 71 N. W. Rep. 370; *Lavin* v. *Bradley,* 1 N. D. 291. Both the drawing and filing of the verified account are indispensable. *Fraine* v. *Hotel Co.,* 5 Pac. Rep. 725; *Gates* v. *Brown,* 25 Pac. Rep. 914; *Collier* v. *Batterton,* 29 S. W. Rep. 490; *U. S. Sav. L. & B. Co.* v. *Jones,* 37 Pac. Rep. 666; *Greeley, etc. Co.* v. *Harris,* 20 Pac. Rep. 764; *Stetson, etc. Co.* v. *Harris,* 32 Pac. Rep. 108. The necessity of a lien statement as against the owner and persons with notice has been recognized by this Court. *Howe* v. *Smith,* 6 N. D. 432; *Red River Lumber Co.* v. *Congregation,* 7 N. D. 46. In the jurisdictions where it is held that a failure to file the lien is not fatal, it will be found that the statute gives the lien upon the performance of the work or furnishing of material without any further action by the lien claimant. *Kirkwood* v. *Haxie,* 95 Mich. 62; *Lamont* v. *Lafevre,* 55 N. W. Rep. 687. A lien statement which does not appear on its face to be verified, where the statute requires it to be verified, is no lien statement at all and extrinsic evidence is not admissible to supply the omission. *Hill* v. *Alliance Bldg. Co.,* 60 N. W. Rep. 752, 6 S. D. 160; *Bank* v. *Hinchliffe,* 4 Ark. 445; *Ladow* v. *Groom,* 1 Denio. 429; *Ennor* v. *Thompson,* 46 Ill. 220; *Cantwell* v. *State,* 27 Ind. 505; *Harty* v. *Ladd,* 3 Ore. 353; *McDermaid* v. *Russell,* 41 Ill. 489; *Hallagan* v. *Herbert,* 2 Daly 253; *Conklin* v. *Wood,* 3 E. D. Smith 663; *Gates* v. *Brown,* 25 Pac. Rep. 914; *Mill Co.* v. *McDonald,* 5 Wash. 496, 32 Pac. Rep. 108; *Colman* v. *Goodnow,* 36 Minn. 9, 29 N. W. Rep. 338; *McGillivary* v. *District,* 65 N. W. Rep. 974; *Orr* v. *Russell,* 48 N. E. Rep. 444; *Lindsay* v. *Huth,* 74 Mich. 712; *Byrd* v. *Cochran,* 58 N. W. Rep. 127; *Finane* v. *Hotel Imp. Co.,* 5 Pac. Rep. 725; *Minor* v. *Marshall,* 27 Pac. Rep. 481; Phillips Mec. Liens (2nd.) § 366. Claiming an amount in excess of what is due vitiates the lien, particularly where the excessive claim is due to a failure to credit payments made. *Gibbs* v. *Hanchette,* 51 N. W. Rep. 691; *Hannah* v. *Mosser,* 62 N. W. Rep. 1120; *Nicolai Bros.* v. *Van Fridagh,* 31 Pac. Rep. 288; *Lynch* v. *Cronin,* 6

Gray 531; *Kling* v. *Ry Co.*, 7 Mo. App. 410. The Reedy Company did not file a "just and true account" of the demand due them and a failure to comply with the statute in this particular is fatal to the lien. *Rude* v. *Mitchell*, 11 S. W. Rep. 225; *Mitchell P. M. Co.* v. *Allison*, 71 Mo. App. 251. The repeal of the former mechanics lien law by the Revised Codes, pages 1517, 1518 and before the Reedy claim for lien was perfected, deprived it of no vested right, but destroyed the remedy by lien. *Dunwell* v. *Bidwell*, 8 Minn. 34; *Hanes* v. *Wadey*, 73 Mich. 178, 41 N. W. Rep. 222. The right to a particular remedy is not a vested right. Cooley Const. Lim. (5th Ed.) 443; *Woodbury* v. *Grimes*, 1 Colo. 100; *Templeton* v. *Horne*, 82 Ill. 491; *Watson* v. *Ry. Co.*, 47 N. Y. 157; *Frost* v. *Ilsley*, 54 Me. 345; *Hall* v. *Bunte*, 20 Ind. 304; *Smith* v. *Bryan*, 34 Ill. 364.

*Cochrane & Corliss*, for plaintiff and respondent.

It being conceded that plaintiff, Turner, was entitled to $51,545.25 on account of the construction of the building, the burden rests upon the defendants of establishing all payments made to him which he does not concede. *Liesemer* v. *Burg*, 63 N. W. Rep. 999; *Wallace* v. *Axtell*, 39 Pac. Rep. 594; *Brown* v. *Morgan*, 56 Mo. App. 382; *Oil Mill Sup. Co.* v. *Wolf*, 28 S. W. Rep. 167, 30 S. W. Rep. 145; *Pierec* v. *Hower*, 42 N. E. Rep. 223; *Lent* v. *Ry. Co.*, 29 N. E. Rep. 988; *Sampson* v. *Fox*, 19 So. Rep. 896; *Smith* v. *Lewiston*, 34 Atl. Rep. 153; *Terryberry* v. *Wood*, 37 Atl. Rep. 246; *Grant* v. *Roberts*, 38 S. W. Rep. 650; *Bannister* v. *Wallace*, 37 S. W. Rep. 250; 18 A. & E. Enc. Law 201-253. When an innocent mistake is made in the statement of lien, the party claiming a larger sum than is due the lien is not affected thereby. Boisot on Mec. Liens, § 425; *Harmon* v. *Ry. Co.*, 22 Pac. 407, 23 Pac. Rep. 1024, 25 Pac. Rep. 124; *Gordon, etc. Co.* v. *San Francisco*, 23 Pac. Rep. 1025; *Pacific M. Ins. Co.* v. *Fisher*, 39 Pac. Rep. 758; *Bank* v. *Curtis*, 18 Conn. 342; *Hopkins* v. *Forrester*, 39 Conn. 351; *Marston* v. *Kenyon*, 44 Conn. 349; *Kiel* v. *Carl*, 51 Conn. 440; *Nichols* v. *Culver*, 51 Conn. 180; *McCormack* v. *Philips*, 4 Dak. 506, 34 N. W. Rep. 39; *Culver* v. *Schoth*, 39 N. E. Rep. 115; *Albrecht* v. *Lumber Co.*, 26 N. E. Rep. 157; *Green Bay L. Co.* v. *Miller*, 62 N. W. Rep. 742; *Parker* v. *Bell*, 7 Gray 429; *Whitford* v. *Newell*, 2 Allen 424; *Underwood* v. *Walcott*, 3 Allen, 464; *Hubbard* v. *Brown*, 8 Allen 590; *Whitney* v. *Joslin*, 108 Mass. 103; *McMonegal* v. *Wilson*, 61 N. W. Rep. 495; *Greenwood* v. *Harris*, 8 Mo. App. 603; *Schroeder* v. *Mueller*, 33 Mo. App. 28; *Gaskell* v. *Beard*, 11 N. Y. Supp. 399; *Goodrich* v. *Gillies*, 31 N. Y. Supp. 76; *Rowland* v. *Harmon*, 34 Pac. Rep. 357; *Chamberlain* v. *Hibbard*, 38 Pac. Rep. 437; *Risen* v. *Moon*, 22 S. E. Rep. 165; *Whittier* v. *Mill Co.*, 33 Pac. Rep. 393; *Proulx* v. *Mill Co.*, 33 Pac. Rep. 1067; *Peterman* v. *Brewing Co.*, 39 Pac. Rep. 452; *Bolster* v. *Stocks*, 43 Pac. Rep. 534; *Hayes* v. *Hammond*, 44 N. E. Rep. 422; Philips on Mec. Liens 355-356. The claim that the lien was not transcribed by the

clerk under the provisions of § 5477 is fully disposed of by this Court in *Red River L. Co.* v. *Congregation,* 7 N. D. 46, 73 N. W. Rep. 203. The statement of lien embodies a sufficient statement of the items making up the plaintiff's claim. *Hilliker* v. *Francisco,* 65 Mo. 598; *Busso* v. *Fette,* 55 Mo. App. 453; *Buchanan* v. *Cole,* 57 Mo. App. 11; *Losman* v. *Conlon,* 57 Mo. App. 25; *Spears* v. *Lawrence,* 38 Pac. Rep. 1049; *Hayes* v. *Hammond,* 44 N. E. Rep. 422; *Davis* v. *Hines,* 6 Ohio. St. 473; *Heston* v. *Martin,* 11 Cal. 41; *Leeds* v. *Linn,* 44 N. W. Rep. 309; *King* v. *Smith,* 44 N. W. Rep. 65; *Brunns* v. *Braim,* 35 Mo. App. 337; *Grace* v. *Nesbit,* 18 S. W. Rep. 1118; Phillips on Mec. Liens, § 352; Boisot Mec. Liens, § 411. There is authority for the proposition that where the claimant makes a contract to do the work for a certain price and in the course of the work extra work is done no itemized statement of the extras is necessary even under a statute requiring an itemized statement. *Hayes* v. *Hammond,* 44 N. E. Rep. 424; *Bruns* v. *Braim,* 35 Mo. App. 337. The statute does not require that payments on the account be itemized. All that is required is that the account shall state the true amount due after allowing all credits. Where the statute does not require an itemized account, the items of debit and credit need not be set forth. Phillips Mec. Liens, § 353; *Wood* v. *King,* 21 S. W. Rep. 471; *Heston* v. *Martin,* 11 Cal. 41; *Brennan* v. *Swasey,* 16 Cal. 140; *Selden* v. *Meeks,* 17 Cal. 128; *Jewell* v. *McKay,* 23 Pac. Rep. 139; *Nichols* v. *Culver,* 51 Conn. 177; *France* v. *Woolston,* 4 Houst. 561; *Simonds* v. *Buford,* 18 Ind. 176; *Neeley* v. *Searight,* 15 N. E. Rep. 598; *Recker* v. *Joy,* 72 Me. 106; *Patrick* v. *Smith,* 120 Mass. 510; *Atkins* v. *Little,* 17 Minn. 358; *Lenkey* v. *Wells,* 16 Nev. 271; *Whittier* v. *Blakely,* 11 Pac. Rep. 305; *Ainslee* v. *Kohn,* 19 Pac. Rep. 97; *Curtiss* v. *Sestanovich,* 37 Pac. Rep. 67.

YOUNG, J. This is an action to foreclose a mechanic's lien upon what is known as the "St. John Block," in the City of Grand Forks. It is conceded that the interests of all the parties joined as defendants herein, in the property in question, are subordinate to the rights of plaintiff under his lien, if he is entitled to one and any balance still remains due to him thereon. The defendant H. H. St. John, the original debtor, and against whose property the lien was filed, did not appear or answer in the District Court. The same is true of George B. Clifford, E. F. Powers and Fred S. Martin. The other four defendants, however, contested plaintiff's right to recover, and in their separate answers set out at length the nature of the interest which each has in this property. The trial Court found for the plaintiff, and fixed the balance due upon his lien at $7,858.25, with 7 per cent. interest from January 3, 1892, adjudged the same to be first lien, determined the relative interest therein of the contesting defendants, and entered the decree of foreclosure usual in such cases. Both the plaintiff and the four contesting defendants appeal. Plaintiff appeals, contending that the sum allowed to him by the trial court is too small by $2,000. To

correct this, he asks us to reverse one particular finding of the Court, wherein, without sufficient evidence to support it, as he contends, he was found to have received at a certain time the sum of $2,000, which amount was charged to him by the Court, and deducted from the amount of his recovery. The defendants the Guaranty Savings Bank of Manchester, N. H., the Security Trust Company, and the Grand Forks Investment Company, feeling aggrieved by the amount of the allowance made to the plaintiff by the Court, also appeal. The remaining defendant, the J. W. Reedy Elevator Manufacturing Company, which claims an interest in the property under an alleged mechanic's lien, which it admits is ·subject to plaintiff's, but which it claims is superior to the rights of the other defendants, appeals from the action of the Court in entirely rejecting its claim to an interest in the property. It will be observed that the entire controversy is between parties asserting conflicting interests in the same property, and is not between Turner, the creditor, and St. John, his debtor.

The case is here for trial anew, under chapter 5 of the Laws of 1897. The record discloses that the defendant H. H. St. John was the owner of, or at least had the record title to, certain corner lots in the City of Grand Forks, and, in addition, was reputed to be a man of some financial resources. On February 11, 1891, St. John orally contracted with plaintiff to erect for him, upon his lots, a five-story brick and stone bank and office building, at an agreed price of $42,839. This did not include the finishing of the fourth and fifth stories. At a later time, however, plaintiff contracted to finish these two stories at a fixed compensation for each, and, in addition, furnished certain extras and made certain alterations; bringing the total cost of the construction of the building, or at least the portion done by plaintiff, to $51,545.25 at its completion. All parties to this litigation agree that this sum was due Turner in the first instance. Actual work was begun March 4, 1891, and the building was completed January 3, 1892. On January 11, 1892, Turner filed a mechanic's lien for an alleged unpaid balance of $22,680.25. In his complaint in this action he sets out as still due him a balance of $12,184.25, with interest from January 3, 1892. As a defense against the lien, all of the defendants united in alleging that plaintiff has been paid in full, and, with the exception of the Reedy Elevator Manufacturing Company, they strenuously urge that defense upon this appeal. It developed that St. John was not a man of means. He did, however, become an extensive borrower. On June 1, 1891, he executed a first mortgage for $40,000 on this property to the Security Trust Company. This mortgage was sold and assigned to the Guaranty Savings Bank, and the notes secured by it are still unpaid. On the same day, to-wit, June 1, 1891, St. John also executed a deed of the property to George B. Clifford and George F. Shutt, which appears to have been given in trust or for security. Again, on November 27, 1891, St. John executed a second mortgage to the Security Trust Company for $10,000.

This that concern still owns, and the debt secured is unpaid.  The Guaranty Savings Bank, and Security Trust Company seek, in their defenses, to protect their respective interests in the property acquired under the mortgages.  On February 11, 1892, George B. Clifford, G. F. Shult, and H. H. St. John joined in deeding the property in question to the Grand Forks Investment Company, which corporation had just come into existence under the auspices of Mr. Clifford, for the purpose, as the evidence shows, of financing this and other buildings then under process of construction and similarly situated financially; that is, to provide a method of carrying them to completion.  The title still continues in the investment company.  It is evident that these loans, which were negotiated by St. John through Mr. Clifford, who was the secretary and general manager of the Security Trust Company, were made for purposes connected with the construction of this building.  The record, however, is silent as to the amount of money realized from them.  Neither does it appear what portion thereof was paid to St. John by the Security Trust Company.  They concern us, in finding the amount due plaintiff, only so far as we can trace payments made therefrom to plaintiff, Turner, upon his account, or to his subcontractors with his assent or upon his order.  It is one of the conceded facts in this case that up to July 15, 1891, all payments made upon the contract were made by St. John; further, that none were made by him personally after that date.  Turner experienced difficulty in getting money from St. John.  The funds which Clifford was disbursing from these loans were not reaching Turner with certainty.  On the above date, Turner obtained this order:  "Grand Forks, North Dakota, July 15th, 1891.  Geo. B. Clifford, Secy.:  Please pay to Art Turner the amts. due him on his contract, from time to time, out of balance to my credit, acct. loan made on the property.  H. H. St. John."  After giving this order, St. John disappears from the record, and returns again only to execute the $10,000 mortgage, and later to join in the deed to the investment company.  The record also shows that all payments that were made after the date of this order, up to and including April 26, 1892, were made by the Security Trust Company.  Further, that all payments made after the last-named date were made by or through the Grand Forks Investment Company, including a prior payment made on March 7, 1892.  It also appears that such payments as were made on the contract by the Security Trust Company and Grand Forks Investment Company (barring the note transactions, to which we will subsequently refer) were all by means of their checks drawn upon the Grand Forks National Bank, of which Mr. Clifford was an officer.  These checks were within defendants' reach, and a portion of them were produced at the trial.  The Security Trust Company kept a ledger account with this building.  This account was afterwards transcribed into the books of the investment company, and by it was carried forward.  These accounts were also carried back to show the amounts paid by St. John upon the contract, and forward to show the bal-

ance due Turner. Turner's account of the entire tranaction was kept by himself in a small pass book, in which, from time to.time, he jotted down items of payment or disbursement. This book was lost by Mr. Turner a year or two prior to the trial. Its absence, however, is not embarrassing; for from it he made two different written statements for the defendants, showing the amounts paid up to October 8, 1891. All subsequent payments are 'entirely within the knowledge of the defendants. He also prepared his lien statement from this book, and in addition the items, as he had them, were compared with the records of the two companies making disbursements, through its officers, and, subject to the correction of one item which he had omitted, was considered by all parties as correct. Defendants offered in evidence several checks showing payment to Turner on dates differing from those found in the statements rendered by him. These we consider as mere discrepancies in dates. The total of payments credited on both statements was the same. Further, all of the checks given in payment, which defendants could apparently have produced, were not offered in evidence, and defendants did not show a total payment greater than that shown by the plaintiff's written statements. The conclusion which we have reached as to the amount due differs from that found by the trial court in several particulars. We have concluded plaintiff did not get the $2,000 charged to him in finding 45a-2, which is as follows: "That therewas paid plaintiff, prior to the commencement of this action, on account of the moneys due him for the construction and erection of· said building, the sum of $2,000, which payment was made by a note of the Grand Forks Investment Company to him, and which note was subsequently paid by said Grand Forks Investment Company." It appears from the evidence that the investment company, in furtherance of the purpose of its existence, namely, to finance this building to a completion, made several payments by check to Turner and to his subcontractors for him. Besides, to relieve the condition which resulted from its inability to pay the amounts due Turner, it issued several promissory notes to him and to his subcontractors, under an arrangement whereby the Grand Forks National Bank, with which Mr. Clifford was connected, was to and did cash the same for the payees, with their guaranty. It was also a part of the agreement with the investment company that the latter would take up the notes so issued, and these amounts were, when paid, to be credited upon the contract. It is conceded these notes so issued were taken up. Among them are two notes given to Turner,—one for $2,000, dated December 20, 1893, due in six months, having upon its back Turner's written guaranty of payment, and also, in lead pencil, the following words: "Hold this note for Turner's indorsement to new note;" another for $2,500, dated December 23, 1893, due in six months, ·also with Turner's guaranty. Both of these notes were produced at the trial by the investment company, and, by separate findings of the trial court, the amount repre-

sented by each was charged to plaintiff. It is urged by plaintiff that this $2,000 note so charged to him was executed by mistake, and does not represent money received by him. A most careful examination of all the evidence relating to this transaction convinces us that in this he is correct. Early in his testimony, when narrating entirely from memory, under skillful cross-examination, the various ways in which he had obtained money upon this contract, and detailing the intricacies of a very complicated account, he said: "I got a couple of notes, one for $2,500 and one for $2,000, and they were paid at the bank, and I got the money on them." Later, however, and upon more mature deliberation, he stated that the only notes he took from the Grand Forks Investment Company to the bank, and cashed, were two, one for $1,000 and one for $1,500; that the $2,500 note was the renewal of these two; that the $2,000 note was an erroneous attempt at a renewal of the same notes. His evidence, standing alone, is not satisfying, but it is as clear as could be expected from one of ordinary memory, in relating the details of an extensive transaction which occurred six years previous, and of which he has no written record. It also appears that no necessity exists for leaving this item in any doubt. Absolute evidence that Turner did cash the note was obtainable at the bank, if that was the fact. This was available to defendants, who had assumed the burden of proving payments upon plaintiff's claim. Our doubt as to this item, however, is set at rest by other evidence. Mr. Webster, called by defendants, stated that he was secretary of the Grand Forks Investment Company, and had been since its organization, in January, 1892. Upon cross-examination, this witness said: "Turner is charged on his account, on page 188, date May 21, 1891, note, $2,500. There is noting else on the ledger." Also, when being further examined as to these notes: "I would not swear positively as to the $2,000 note, but at the time the $2,500 note was—at the time the settlement was made with the receiver, the memorandum made at the time of the settlement shows another note for $2,000, which was in the Grand Forks National Bank, but I would not swear positively to the $2,000 note. It is the note, as I recollect it, that was charged to him as bills payable. All the payments I can swear to positively as having been made to Mr. Turner by the Grand Forks Investment Company on this account, since I took the secretaryship of that company, are the $2,000 and $2,500." The $2,000 payment to which the witness refers relates to a check given by the investment company on May 11, 1892, which has been properly charged to Turner elsewhere, and has no connection with the $2,000 note. Elsewhere this witness, detailing the various payments made by his company upon this building to Turner's subcontractors, said that it "has also paid Mr. Turner $2,000 cash, and gave him a note for $2,500, which it afterwards paid. I think both of these transactions were after the books came into my possession, after May. My recollection is, it was paid $2,000 in cash and a note for $2,500, which the investment com-

pany afterwards took up." Aside from the evidence of witnesses bearing directly upon this question, there is the strong evidence of conceded balances, showing that Turner did not cash this note, and that the trial court was wrong in charging it to him. It stands uncontradicted in the evidence that there was due Turner a balance of $1,284, in addition to the sum of $8,500 involved in a note transaction, to which reference will hereafter be made. Turner swore to it. Both Clifford and Webster assented to it, and the books of the investment company show it. This, if the plaintiff is not to be charged with the $8,500 note transaction,—and the trial court found he was not,—makes a total due plaintiff of $9,784, or $1,925.75 more than was found by the trial court. This difference evidently resulted from erroneously charging the $2,000 note to Turner. The slight discrepancy of $74.25 probably resulted from an adjustment of other matters which do not appear in evidence.

We will now consider what in the briefs of counsel is termed the "note transaction." During the time when the Security Trust Company was making payments upon the contract, and at a time when it was not able to do so, and the demands of Mr. Turner, as well as his subcontractors, for money, were extremely urgent, and their necessities great, Mr. Clifford proposed that they give their notes to the Security Turst Company, and he would negotiate them and get the cash for them. This was done, and their notes were given, aggregating in amount $8,500. All of these notes, or renewals thereof, are outstanding and unpaid. It seems, also, to be undisputed that, when the notes were given, Clifford assured the makers that he would take care of the notes by personally paying them, or by a sale of the stock of the Grand Forks Investment Company, which he then had in contemplation as a means of financing these unpaid balances, which stood as first liens upon property in which both he and his clients had heavy interests. There is evidence tending to show that subsequently stock in that company was issued and was held as collateral to these notes. Defendants contend that this $8,500 so realized should be credited upon the building. To this we cannot agree. These parties gave their individual notes and got the money. Those notes are outstanding and unpaid. Defendants seek to connect the loan transaction with Turner's contract. It is doubtless true that, if St. John had met his payments, these parties would not have given their notes to get necessary funds. And it is also probable that Clifford would not have negotiated the loans or made promises to take care of the notes had it not been imperative, in his view, in his own and his client's interest, to gain time to take care of the unpaid balance due Mr. Turner. It is plain to us that this tranaction, when devested of the complications incident to a mistaken business venture, amounts merely to an ordinary loan, made by the plaintiff and his subcontractors through the agency of Mr. Clifford, from the Security Trust Company, and upon the promise to pay contained in their notes. There is an item of $552.60 which we deem proper to charge to Turner. This the

trial court refused to do. This item grows out of an over-payment of that amount made to Mr. Deming, one of Turner's subcontractors, by the investment, company. Our examination of the evidence satisfies us that Mr. Turner assented that this sum should be charged back to him, and, further, that he has had the benefit of it in the settlement of his accounts with Deming, and we so determine. It also appears that the plaintiff has occupied an office in this building along with Dinnie Bros., and has paid no rent pending the settlement of the balance due him. There is no sufficient basis in the evidence for a complete adjustment of this to date. We therefore shall deduct from his recovery only the sum of $180, being $7.50 per month for 24 months, the same amount paid by Dinnie Bros., as shown by the evidence. Recapitulating, we find the balance due plaintiff to be $2,000 in excess of the amount found by the trial court, less the Deming item of $552.60, and rent, $180, or, in exact figures, $9,125.65, with 7 per cent. interest since January 3, 1892.

. These three defendants, whose appeals we have been considering, in addition to the defense of payment, also attack the validity of the lien itself. It is urged that if the $8,500 note transaction, before referred to, did not in fact amount to a payment upon the amount due Turner, nevertheless Clifford's promise, and the issuance of the investment company stock, if such was the fact, constituted such a taking of collateral security as forfeited plaintiff's lien, under section 5468, Comp. Laws, then in force, which is as follows: "No person is entitled to a mechanic's lien who takes collateral security on the same contract." The facts in this case, as we find them, render this principle entirely inapplicable. If in fact we assume that security was given by Clifford of a valid and enforceable nature, and that the stock was issued and put up, it was merely to secure the payment of the notes given by Turner and others to the Security Trust Company, upon which they had, in our view, borrowed money, and for nothing else. There is an entire absence of evidence even tending to show that Turner ever received or held collateral security of any kind to secure the debt due him from St. John. Appellants also contend that the lien statement filed by plaintiff does not contain "a just and true account of the demand due him, after allowing all credits," as provided in section 5476 of the Compiled Laws, which were in force when the statement was filed. The account is first assailed as insufficient in substance. We think the account is sufficient. It shows upon its face that all items were furnished between February 11, 1891, and January 3, 1892. On the debit side, St. John is charged with the prices agreed upon for the three separate contracts, properly designating each, as the original contract, the one for the fourth, and the one for the fifth story. The remaining charges are made in 39 separate amounts, preceded by a clear statement of what each is for.

Under the total of the debits appears the credit for cash paid, followed by the balance found due after the deduction. An "account" under the statute referred to, is sufficient if it comes within the ordinary meaning of that term, or is one that is a fair and substantial compliance with the law. In the language of *Gwin* v. *Waggoner* (Mo. Sup.) 11 S. W. Rep. 227, relied upon by appellants, a just and true account, even when required to be itemized, means "a fairly-itemized account, showing what the materials are, and the work that was done, and the price charged, so that it can be seen from the face of the account that the law gives a lien therefor. See Phil. Mec. Liens (2d Ed.) § 353, and cases cited.

The chief and more serious objections made to the account filed is that it is not true, in not correctly stating the credits, and in claiming an amount largely in excess of the amount actually due. The evidence shows that at the date the lien statement was sworn to, to-wit, January 10, 1892, the following payments had been made, either to the plaintiff or to his subcontractors for his benefit, none of which payments were credited upon the account: $2,000 paid directly to Turner by a check of St. John's dated May 23, 1891; $2,100 paid to the Minneapolis Wire Works Company by the Security Trust Company by check dated December 10, 1891; $500 paid to C. B. Deming by the Security Trust Company by check dated December 21, 1891,—all three checks being drawn upon the Grand Forks National Bank. The failure to credit the last two payments was so clearly excusable and innocent that we merely refer to the facts: First, they were not made to Turner himself, but to his creditors, and only a very short time before the lien was sworn to, and it is not clear that such payments had actually come to his knowledge; second, the account attached to the lien, although sworn to on January 10, 1892, bears date of December 10, 1891, and only purports to give the state of the account to that date, which was in fact prior to both of these payments. The only question, then, is as to the $2,000 payment made by St. John. This item was not credited in either of the two written accounts presented to the defendants. The evidence shows that plaintiff had no record of it when his account was being compared, by him and the officers of the Security Trust Company, with their books, subsequent to the filing of the lien. It developed then that an entry appeared on their books showing this payment by St. John. Upon the discovery of this entry, Mr. Turner and a representative of the trust company made an investigation to ascertain the correctness of the charge, and, after a search through the canceled checks of St. John in the Grand Forks National Bank, found St. John's check for the $2,000. Turner promptly corrected the error, and at no time since has the payment been questioned by him. It seems that his brother had obtained the money on the check, and then deposited it in the bank, but failed to give St. John credit for it upon the account. Does the fact that the amount claimed in the lien was excessive, in the amount and under the circumstances above stated, defeat the

lien? We think not. The Supreme Court of Michigan in *Gibbs v. Hanchette,* 51 N. W. Rep. 691, a case cited by appellants, states the principle applicable in the following language, which meets with our approval: "The purpose of the statute is that an accurate and truthful claim shall be filed. The authorities very generally hold that where there is an honest mistake of fact, made in the honest belief of its correctness, courts will not for that reason hold that the lien is lost. But, where claimants place upon record a statement which they know is not correct, the authorities are very uniform that the lien is lost." In our judgment, the mistake in the credits was both honest and excusable, and does not defeat plaintiff's lien. The fact of the failure of the clerk to abstract the lien statement need not be determined. The defendants are not innocent purchasers or incumbrancers, and are not in a position to gain added rights by reason of that omission, as foreshadowed, but not decided, in *Lumber Co.* v. *Friel,* 7 N. D. 46, 73 N. W. Rep. 203.

We will now consider the appeal of the Reedy Elevator Manufacturing Company. On August 28, 1891, this appellant made a written contract with St. John to erect a passenger elevator in this building, at an agreed price of $2,850. It was built according to contract, and turned over, completed, on December 30, 1891. On March 28, 1892, appellant filed with the clerk of the District Court of Grand Forks county an account claiming a lien for the balance of the contract price, which was then and is still unpaid. Appellant's claim was entirely denied by the trial court upon objections made by the Guaranty Savings Bank and Security Trust Company, directed to the sufficiency of the account filed, both in substance and in form. The account was filed under section 5476, Comp. Laws, then in force, which reads as follows: "Every person, except as has been provided for subcontractors, who wishes to avail himself of the provisions of this chapter, may file with the clerk of the District Court of the county or judicial subdivision in which the building, erection or other improvement to be charged with the lien is situated, and within ninety days after all the things aforesaid shall have been furnished or the labor done, a just and true account of the demand due him after allowing all credits, and containing a correct description of the property to be charged with said lien, and verified by affidavit; but a failure to file the same within the time aforesaid shall not defeat the lien, except as against purchasers, or incumbrancers in good faith, without notice, whose rights accrued after the ninety days and before any claim for the lien was filed." The account is in form an affidavit purporting to have been made for appellant by its vice president. After the venue, it begins with this recital: "William J. Reedy, being duly sworn, says." At the close appears the signature, "William J. Reedy," and underneath his name the words, "Subscribed and sworn to before me this 28th day of———, 18—." Instead of a jurat, there

is attached, on a separate slip of paper, pasted over the words last quoted, a regular form of acknowledgment.

The first objection is that the account filed "does not contain any account of any work done or material furnished or credits given, * * * and does not contain an account of the amount claimed to be due the pretended lienholder." This objection is not tenable. The phraseology of the account may be subject to criticism, but its meaning is clear. It shows upon its face the contract price, and, in detail, a complete description of the elevator constructed, and includes the statement that there is due the sum of $2,690, after allowing all credits.

The second objection is "upon the ground that the pretended lien is not sworn to as required by law, and is not verified as provided and required by law." If, in fact, the account filed was not "verified by affidavit," as required by the statute above quoted, it is a nullity, and the omission is incurably fatal to the enforcement of any rights which depend upon it. Oral evidence was offered to show that the affidavit was sworn to. This the trial court refused to consider. In accordance with the statute under which the case was tried, however, this evidence was received, and, together with the rejected account, is in the record before us. Does the failure of the notary public to attach the jurat render the affidavit a nullity? Our construction of the statute, based upon the overwhelming weight of judicial interpretation, while contrary to usage, compels us to give a negative answer. In the absence of a legislative mandate requiring the jurat, or some provision of law making it an essential part of the affidavit or oath, an account in writing, duly sworn to before a proper officer, and filed under the section above quoted, is not fatally defective on account of the absence of the jurat, and the fact that it was sworn to may be proved by extrinsic evidence. The statement of account which the lien claimant files must be "verified by affidavit." In the absence of a statute affixing a different meaning, "an affidavit is simply a written declaration on oath, in writing, sworn to by the declarant, before a person who has authority to administer oaths." And. Law Dict.; 1 Bouv. Law Dict. 79; *Harris* v. *Lester,* 80 Ill. 307; *Hitsman* v. *Garrard,* 16 N. J. Law, 124; *Cox* v. *Stern,* 170 Ill. 442, 48 N. E. Rep. 906; 1 Enc. Pl. & Prac. 309. See also, Comp. Laws, § 5278. "The jurat or certificate is no part of the oath or affidavit, but simply evidence that the oath was made or the affidavit was sworn to." *Bantley* v. *Finney* (Neb.) 62 N. W. Rep. 213; *Williams* v. *Stevenson,* 103 Ind. 243, 2 N. E. Rep. 728. It is also held that "it is not necessary to its completeness that the party making should sign it, unless the statute expressly requires such signatures." *Bates* v. *Robinson,* 8 Iowa 318; *Hargadine* v. *Van Horn,* 72 Mo. 370; *Norton* v. *Hauge* (Minn.) 50 N. W. Rep. 368. *Cox* v. *Stern,* supra, involved the sufficiency of an affidavit extending a chattel mortgage lien. Like this case, the affidavit was signed, and acknowledgment attached instead of a jurat. The opinion tersely states the doctrine, upheld

by the decided weight of authority, in this language: "We are of the opinion that the jurat or certificate of the officer administering the oath is not a necessary part of the affidavit, but that it may be shown aliunde that the statements contained in the instrument were, in truth and in fact, made as they purported to be,—on oath duly administered by an officer duly authorized. The statute prescribes no form for the affidavit, and makes no provision as to the form in which the evidence of the oath shall be preserved or made to appear, but only requires that an affidavit shall be filed, etc. Of course, common prudence would dictate that a properly executed jurat, or certificate of the officer showing the oath, should be attached; but, when attached, it is not conclusive, but may be shown to be false; and if shown to be false, and that no oath was in fact administered, the instrument would not be an affidavit. We are of the opinion that the record was sufficient to give notice to third persons that the alleged affidavit was made on oath, and that parol evidence was admissible on the trial to prove that the oath was actually taken." *Cox* v. *Stern,* 170 Ill. 442, 48 N. E. Rep. 906.

Our views find support in the following cases: *Hitsman* v. *Garrard,* supra; *Ladow* v. *Groom,* 1 Denio, 429; *Lawton* v. *Kiel,* 51 Barb. 30; *Bergesch* v. *Keevil,* 19 Mo. 127; *Finley* v. *West,* 51 Mo. App. 569; *Bennet* v. *Paine,* 7 Watts, 334; *Borough of Pottsville* v. *Curry,* 32 Pa. St. 443; *Angier* v. *Schieffelin,* 72 Pa. St. 106; *Jackman* v. *Gloucester,* 143 Mass. 380; 9 N. E. Rep. 740; *Williams* v. *Stevenson,* 103 Ind. 243, 2 N. E. Rep. 728; *Grocery Co.* v. *Draham,* 8 Wash. 263, 36 Pac. Rep. 31; *Fortenheim* v. *Chailin,* 47 Ark. 49, 14 S. W. Rep. 462; *Bloomingdale* v. *Chittenden,* 75 Mich. 305, 42 N. W. Rep. 836; *Peterson* v. *Fowler,* 76 Mich. 258, 43 N. W. Rep. 10; *Kruse* v. *Wilson,* 79 Ill. 233; *Harris* v. *Lester,* 80 Ill. 307; *Bickerdike* v. *Allen,* 157 Ill. 95, 41 N. E. Rep. 740; *Cook* v. *Jenkins,* 30 Iowa, 452; *Stout* v. *Folger,* 34 Iowa, 71; *Stock Co.* v. *Weber,* 41 Ohio St. 689; *Fidelity Insurance, Trust & Safe-Deposit Co.* v. *Roanoke Iron Co.,* 81 Fed. Rep. 439; *Ainslie* v. *Kohn,* 16 Ore. 363, 19 Pac. Rep. 97; *Ice Co.* v. *Eastman* (Wyo.) 38 Pac. Rep. 680. There are authorities in irreconcilable conflict with the foregoing, among which may be cited *Hill* v. *Building Co.,* (S. D.) 60 N. W. Rep. 752; *Coleman* v. *Goodnew,* 36 Minn. 9, 29 N. W. Rep. 338; *Finane* v. *Improvement Co.* (N. M.) 5 Pac. 725, followed in *Minor* v. *Marshall* (N. M.) 27 Pac. 481. There is also a class of cases holding the absence of the jurat is fatal, which are based upon special statutory requirements relating to the affixing of the signature and seal of the officer. *Gates* v. *Brown* (Wash.) 25 Pac. Rep. 914; *Mill Co.* v. *McDonald* (Wash.) 32 Pac. Rep. 108. Our conclusions are not at variance with the line of authorities holding that the jurat is essential as preliminary proof that the contents of the affidavit were in fact sworn to, in cases where the affidavit is primarily to be used as evidence, or is to be presented to a public officer whose right or duty to act depends upon such affidavit. Such, in our view, is *McGillivray* v.

*District Tp.* (Iowa) 65 N. W. Rep. 974; also, *State* v. *Green,* 15 N. J. Law, 88.

Having reached the conclusion that the absence of the jurat is not fatal, and that evidence aliunde is admissible to show that the affidavit was properly sworn to, we have no difficulty in finding that it was so sworn to. Both the notary public and affiant so testify, and without contradiction. The affidavit itself also corroborates the statement of the notary that the acknowledgment was attached by an oversight. This appellant's account was then verified by affidavit. Its lien is a valid lien, inferior to plaintiff's, but superior to the interests of all the remaining defendants. *Heater Co.* v. *Gordon,* 2 N. D. 246, 50 N. W. Rep. 708.

After the testimony was in, arguments made, and findings presented, the Court, upon plaintiff's motion, reopened the case, and permitted further evidence to be introduced, against defendants' objection. This is urged as error. We do not think the record shows an unwarranted use by the trial court of its discretion in so doing. "It is a familiar rule of District Court practice for the trial court, after the evidence has been taken, in the exercise of judicial discretion, to reopen the case, and receive further evidence, at any time prior to filing its decision." *Second Nat. Bank* v. *First Nat. Bank,* 8 N. D. 50, 76 N. W. Rep. 504.

The judgment and decree of the District Court rendered and entered herein are reversed, vacated, and set aside; and in accordance with our findings herein, and the stipulation contained in the record, showing the amount due on the three subordinate liens, it is ordered and adjudged that the District Court enter judgment of foreclosure and sale herein, establishing plaintiff's lien as a first lien upon the premises described in the complaint for the sum of $9,125.65, with interest thereon from January 3, 1892, to the date of the judgment, at 7 per cent. per annum; also for plaintiff's costs and disbursements herein in both the District and Supreme Courts. The taxation of costs in the District Court already made will stand, and the costs of plaintiff in the Supreme Court are to be taxed in the usual way. The judgment of the District Court will direct that the person making the sale shall, after paying the expenses of said sale, and paying plaintiff the amount of his lien, with interest and costs and disbursements, pay to the defendant the J. W. Reedy Elevator Manufacturing Company the amount of its mechanic's lien upon said premises, which is hereby established at the sum of $2,609.01, with interest thereon from March 28, 1892, at 7 per cent. per annum, and also its costs herein in both District and Supreme Courts, to be taxed in the usual way. Out of any surplus in his hands, the person making the sale will pay the Guaranty Savings Bank of Manchester, N. H., the amount of its lien on said premises, fixed by the record, and hereby established as a third lien thereon, and inferior to the two mechanics' liens just referred to, at the sum of $54,227.16, with 7 per cent. interest thereon since October 5, 1898; and out of any surplus in his hands, after

paying said first three liens, with costs and disbursements, the person making the sale will pay the Security Trust Company the amount due upon its lien upon said premises, which is hereby established as a fourth lien thereon, subject to the three liens above referred to, at the sum as fixed by the record, to-wit, $14,289.66, with 7 per cent. interest thereon since October 5, 1898; and, should there be any further surplus remaining in his hands, the same is to be paid to the Grand Forks Investment Company, the owner of the premises in question. All concur.