COOK BORDEN & COMPANY, INC. *vs.* COMMONWEALTH & others.

SAME *vs.* SAME.

Bristol. October 28, 1935. — January 7, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Commonwealth*, Security for public work. *Oath. Jurat. Contract*, Construction. *Sale*, Construction of contract of sale.

A statement of claim with an unsigned form of jurat annexed, though actually sworn to before a notary public, was not a "sworn statement" under G. L. (Ter. Ed.) c. 30, § 39.

Under a contract to sell exterior finish to a building contractor, which contract imported by reference specifications defining exterior finish as including siding, siding furnished by the seller was covered by the contract and was not an extra.

TWO PETITIONS, filed in the Superior Court on May 10, 1932.

The cases were referred to a master, whose reports were confirmed. By order of *Hanify*, J., the final decrees described in the opinion were entered. The petitioner appealed from both decrees.

The master's report in the second case contained the following findings, among others: The petitioner received an order from the Testa and Scurto Engineering Company, "for the sum of $1,900," for specified materials, including "Exterior Wood Finish," for a superintendent's

residence at Westfield, "according to [certain] plans and specifications." Subsequently "a contract was made on . . . [such] terms" and the petitioner furnished the materials called for. The petitioner "claimed to have furnished . . . as extras" siding in the sum of $595.08 and mirrors in the sum of $25.20. The respondents "contended that these items came under the contract" and that "siding was included under 'exterior wood finish.'" There were in evidence the "specifications for the general contract on the building," listing "Siding" under the heading "Exterior Wood Finish." The Testa and Scurto Engineering Company was indebted to the petitioner for "Contract price $1900," siding in the sum of $595.08, and mirrors in the sum of $25.20, "a total of $2520.28 less cash credits of $1800.00 leaving a balance due of $720.28 for which the Bonding Company is also responsible if, as a matter of law, the . . . [petitioner] filed a sufficient statement of its claim. If as a matter of law because of the terms of the contract between the . . . [petitioner and the Testa and Scurto Engineering Company, the petitioner] was bound thereunder to furnish siding, the last figure should be reduced by $595.08, leaving a balance of $125.20 due."

*W. E. Crowther*, for the petitioner, submitted a brief.

No argument nor brief for the respondents.

PIERCE, J. These are two petitions brought by the petitioner in its own behalf and also in behalf of other claimants similarly situated, under G. L. (Ter. Ed.) c. 30, § 39, against the Commonwealth, certain named respondents doing business as Testa and Scurto Engineering Company of Boston in the county of Suffolk in said Commonwealth, and Consolidated Indemnity and Insurance Company, a corporation duly established and having a place of business in Boston in the county of Suffolk in said Commonwealth. The petitions were referred to a master. The master in each case, after hearing, settled his report, gave notice to the parties, furnished them with copies of the final report, held the report for ten days to allow the bringing in of written objections, and, no objections being

brought in, filed his report in the Superior Court. In each case an interlocutory decree was entered confirming the report.

In the first case the report discloses that the respondent Testa and Scurto Engineering Company (hereinafter called the respondent) made a contract with the Commonwealth through the department of public health for the construction of a superintendent's residence at Lakeville State Sanatorium, and furnished a bond with the respondent Consolidated Indemnity and Insurance Company (hereinafter called the insurance company) as surety, "conditioned upon the faithful performance by the general contractor of all the agreements, terms and conditions of said contract on its part to be kept and performed and also for the payment 'for all labor performed or furnished, and for all materials used in the carrying out of said contract.'" The respondent completed the work required by the contract and it was accepted by the department of public health on April 23, 1931. The Commonwealth has in its possession the sum of $12.63 due under the contract to the respondent. The petitioner furnished the respondent "materials which were actually used or consumed in the construction of said building." The amount chargeable for these materials was in dispute. The master found that the amount due was $1,085.72 or $938.81, depending on the question whether or not the petitioner under its contract with the respondent was required to furnish "siding" under its agreement that there should be "delivered at the job" all "Exterior Wood Finish."

G. L. (Ter. Ed.) c. 30, § 39, reads as follows: "Officers or agents contracting in behalf of the commonwealth for the construction or repair of public buildings or other public works shall obtain sufficient security, by bond or otherwise, for payment by the contractor and sub-contractors for labor performed or furnished and for materials used or employed in such construction or repair; but in order to obtain the benefit of such security, the claimant shall file with such officers or agents a sworn statement of his claim, within sixty days after the claimant ceases to perform labor

or furnish labor or materials, and shall, within one year after the filing of such claim, file a petition in the superior court for the proper county to enforce his claim or intervene in a petition already filed; and the provisions of chapter two hundred and fifty-eight shall apply to such petitions."

The last delivery on the Lakeville job was made March 20, 1931. Within sixty days thereafter, on May 15, 1931, the petitioner filed with the Commonwealth, through the department of public health, on a form provided by said department, a statement of its claim for materials furnished. This statement was executed by the petitioner and was complete in every detail except that the certificate of oath thereto, although filled out in form, was not signed by any officer qualified to take oaths. This statement purported to cover materials furnished on both the Lakeville job and the Westfield job, which was the subject involved in the second case as will hereafter appear. Attached to the statement was a schedule of the alleged charges and credits on account of both the Lakeville and Westfield jobs. On May 23, 1931, the petitioner filed with the department of public health a statement, on the form provided by the department and duly sworn to, making claim for materials furnished on the Lakeville job for $1,098.92. No schedule accompanied this statement. The Commonwealth in its answer admitted the receipt of the sworn statement from the petitioner on May 15, 1931, and of a supplemental sworn statement on May 23, 1931. Evidence was received by the master to the effect that one Smith, treasurer of the petitioner, swore to the statement of May 15 before a notary public, and testimony was received from the notary public "that she took Mr. Smith's oath to the statement." On this evidence the master found "as a fact that Smith did swear to the statement in behalf of the petitioner and that she took his oath but did not sign the certificate through inadvertence."

The second case differs from the first case in the following particulars: The respondent made a contract with the Commonwealth, through the department of public health,

for the construction of a superintendent's residence at Westfield State Sanatorium, and furnished a bond with the insurance company as surety in the sum of $17,000, instead of $17,325. The respondent's contract was completed, and the work accepted by the department of public health on June 10, 1931. The last delivery of materials on the Westfield job was made on April 6, 1931. The same evidence was received and the master found the same facts as in the first case; and, as there, the amount chargeable was in dispute between the parties. As in the first case, the master found a balance due of $720.28 if the petitioner was not bound to furnish "siding" under the contract to deliver all "Exterior Wood Finish," and that, if it was so bound, the figures should be reduced by $595.08 leaving a balance of $125.20 due.

In the first case a final decree was entered as follows: "1. That there is due from the respondents, Ralph Testa, Jake Scurto, Antonio Landino and Giovanni Polevo, to the petitioner in respect to the subject matter set forth in the petition the sum of . . . $938.81 with interest thereon from the date of the filing of the petition to the date hereof, amounting to $89.86. 2. That the claim of the petitioner against the respondents, the Consolidated Indemnity and Insurance Company and the Commonwealth of Massachusetts be and the same is hereby disallowed, the petitioner having failed to comply with the provisions of G. L. c. 30, § 39. And it is ordered that the petition be dismissed as against said respondents, the Consolidated Indemnity and Insurance Company and the Commonwealth of Massachusetts." In the second case the final decree entered reads: "1. That there is due from the respondents, Ralph Testa, Jake Scurto, Antonio Landino and Giovanni Polevo, to the petitioner in respect to the subject matter set forth in said petition the sum of $125.20 with interest thereon from the date of the filing of the petition to the date hereof, amounting to $11.92; that petitioner's claim for siding as an extra outside of the contract be and the same hereby is disallowed. 2. That the respondent, Consolidated Indemnity and Insurance Company by virtue of its liability on

its bond is indebted to the petitioner for said sums, and it is ordered that said Consolidated Indemnity and Insurance Company pay to the petitioner said sums of $125.20 and $11.92, together with costs in the sum of $32.70. 3. That the bill be dismissed as against the Commonwealth of Massachusetts." In each case the petitioner appealed from the final decree to the Supreme Judicial Court.

In each case the petitioner filed with the department of public health a statement of its claim within sixty days of the last delivery of materials which were actually used in the construction of the residences at Lakeville and at Westfield. When the statement was filed on May 15, 1931, it had no certificate evidencing that the affidavit was properly made before an officer qualified to administer oaths. When a sworn statement was again filed by the petitioner covering both jobs on May 23, 1931, the statement had a proper and legal jurat attached to the affidavits or affidavit. In the first case more than sixty days had passed when the jurat was attached to the second sworn statement of claim. In the second case the last delivery of materials consumed in the erection of the Westfield residence was on April 6, 1931. It follows that the second sworn statement with the attached jurat was filed within sixty days and was a compliance with G. L. (Ter. Ed.) c. 30, § 39.

In the first case the only question of law now open on appeal is whether or not the written statement was invalid as a sworn statement of the petitioner's claim because the jurat of the notary public who took the oath of the petitioner was not signed by the notary public through inadvertence. It was required by Pub. Sts. c. 191, § 6, now G. L. (Ter. Ed.) c. 254, § 8, that one claiming a mechanic's lien must file in the registry of deeds a statement of a just and true account subscribed and sworn to by him or someone in his behalf. Respecting that requirement it was said in *Jackman* v. *Gloucester*, 143 Mass. 380, 381: "There is nothing in the statute that in terms requires any certificate of the oath, although the statute, construed with reference to well-known usages, undoubtedly implies that the statement

shall have a jurat attached." That sentence was expressive of the common understanding and general practice as to the meaning of the statute. Although G. L. (Ter. Ed.) c. 30, § 39, which governs the present proceeding, is not specified as a mechanics' lien statute, it is in substance the same in its mandate as the mechanics' lien statute and should be construed according to the same principles. *Nash* v. *Commonwealth,* 174 Mass. 335, 336. The mechanics' lien statute has always been construed somewhat . strictly. *Ellinwood* v. *Worcester,* 154 Mass. 590. The sentence quoted from *Jackman* v. *Gloucester,* 143 Mass. 380, has undoubtedly been accepted in practice as the law of this Commonwealth by the profession and public. There are practical considerations of importance supporting that view. The sworn statement is designed in part to be the basis of action by others who are entitled to like relief and by public officers. To hold that there need be no jurat attached would open the door to fraud difficult to detect. There is nothing in the decision of *Commonwealth* v. *Keefe,* 7 Gray, 332, adverse to this conclusion. The authorities in other jurisdictions are in conflict. A considerable number of decisions support the result here reached.* There are numerous cases to the contrary.† It would serve no useful purpose to review any of these decisions.

Having regard to well known business usages in the Commonwealth, we think G. L. (Ter. Ed.) c. 30, § 39, manifests a legislative intent to require a claimant who seeks the benefits conferred by that statute to file a signed statement of his claim with the officers or agents contracting on behalf of the Commonwealth, within sixty days after

---

* *In re Coleman & Titus Corp.* 286 Fed. Rep. 303. *Benedict* v. *Peters,* 58 Ohio St. 527. *Holmes* v. *Crooks,* 56 Neb. 466. *Hitsman* v. *Garrard,* 1 Harr. 124. *Hill* v. *Gilman,* 39 N. H. 88. *Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 60. *Bill* v. *Bament,* 9 Dowl. Pr. Cas. 810. *Inman* v. *Rae,* 10 Manitoba, 411. Compare *Clement* v. *Bullens,* 159 Mass. 193; *Fidelity Insurance, Trust & Safe-Deposit Co.* v. *Roanoke Iron Co.* 81 Fed. Rep. 439, 452; *Meldrum* v. *United States,* 151 Fed. Rep. 177, 182; *Ladow* v. *Groom,* 1 Denio, 429, 431; *Sage* v. *Stafford,* 42 App. Div. (N. Y.) 449, 453.

† *People* v. *Block,* 281 Ill. 227, 229. *Cox* v. *Stern,* 170 Ill. 442, 446. *Doty & Co.* v. *Boyd,* 46 S. C. 39. *Capner* v. *Flemington Mining Co.* 2 Green Ch. 467. *Sage* v. *Stafford,* 42 App. Div. (N. Y.) 449. *Turner* v. *St. John,* 8 N. D. 245, 260–261. *James* v. *Logan,* 82 Kans. 285. *Farrow* v. *J. A. Hayes & Co.* 51 Md. 498, 507. *Beach* v. *Averett,* 106 Ga. 73. *Hyde* v. *Adams,* 80 Ala. 111, 113. *Bittick* v. *State,* 67 Ark. 131. *Cusick's Election,* 136 Penn. St. 459.

the claimant ceases to perform labor or furnish materials for the construction or repair of public buildings or other public works; and that said statute further requires that the sworn statement, when filed, shall have attached to it a certificate of the officer who administered the oath to the claimant. See *Jackman* v. *Gloucester*, 143 Mass. 380, 381. It follows that paragraph 1 of the final decree in the first case should be amended by striking out the words "to the date hereof, amounting to $89.86," and substituting in place thereof the following: to the date of the entry of the final decree after rescript. The decree as so modified is to be affirmed with costs.

The second case is free from any legal question arising from the fact that the first sworn statement of claim had no signed jurat when filed on May 15, 1931, because the second statement of claim filed on May 23, 1931, was signed by the notary within sixty days from April 6, 1931, the day of the last delivery on the Westfield job. The only question for decision remaining in the second case is whether or not the "siding" was within the contract of the petitioner to furnish all "Exterior Wood Finish." The petitioner's contention is that the agreement or terms of the contract were changed by mutual consent upon sufficient consideration. We think the reported facts found by the master do not sustain the contention of the petitioner in this regard, and that the ruling of the trial judge embodied in the final decree was warranted. The final decree is to be amended in paragraph 1 by striking out the words "to the date hereof, amounting to $11.92," and substituting therefor the words: to the date of the entry of the final decree after rescript; and in paragraph 2 by striking out the figures "$11.92," and substituting therefor the amount found due as interest in accordance with paragraph 1 of the decree as amended. As so modified the final decree is affirmed with costs.

*Ordered accordingly.*