VALENTINE LUMBER & SUPPLY COMPANY *vs.* ADRIAN R. THIBEAULT & others.

Hampden.    September 22, 1955. — December 14, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Mechanic's Lien. Contract,* Building contract, Performance and breach. *Equity Pleading and Practice,* Bill.

An agreement, entered into during the construction of a house by one of two owners of the land, the builder, and a materialman who had taken steps to secure a lien under G. L. (Ter. Ed.) c. 254, § 4, fixing the amount then due the builder and providing for payment of such amount by the "owner" to the builder and the materialman jointly "after entire completion of construction" and for the materialman's discharging his lien upon such payment, could not be the basis for a decree in a suit in equity establishing the materialman's lien in the amount so fixed, or for recovery by the materialman of the amount so fixed from either of the owners, if the construction never was completed by the builder and nothing ever became due under the agreement.  [355–356]

The establishment of a subcontractor's lien on real estate under G. L. (Ter. Ed.) c. 254, § 4, was not precluded by the fact that the principal contract between the landowner and the contractor had an indefinite completion date.  [356]

In an "actual notice" given by a subcontractor to a landowner of recording of a notice of contract under G. L. (Ter. Ed.) c. 254, § 4, an error in stating the date of recording was not fatal to the subcontractor's lien.  [357]

A statement of account recorded under G. L. (Ter. Ed.) c. 254, § 8, by a materialman having a subcontractor's lien under § 4 properly omitted items furnished by him before he gave "actual notice" of the recording of notice of his subcontract, and properly included items furnished by him before the completion date fixed by his subcontract but not to be paid for by the builder until after that date and items furnished by the materialman after that date.  [357]

Insufficiency through mistake in a credit given in a statement of account recorded under G. L. (Ter. Ed.) c. 254, § 8, by a materialman having a subcontractor's lien under § 4 did not affect the validity of the lien where it did not appear under § 11 that by such insufficiency the materialman "wilfully and knowingly claimed more than . . . [was] due him."  [358]

A subcontractor's lien of a materialman under G. L. (Ter. Ed.) c. 254, § 4, covered items furnished by him for a house under his original, unchanged subcontract by reason of an agreement made between the builder and the owner during construction providing for changes in the work requiring additional materials.  [359]

The plaintiff in a suit in equity to enforce a subcontractor's lien claimed under G. L. (Ter. Ed.) c. 254, § 4, whose bill had annexed to it an alleged copy of his recorded statement of account indicating by an incomplete and unsigned jurat that the statement had not been sworn to in conformity to § 8, was bound by the form of the annexed copy notwithstanding a finding by a master that the statement had been sworn to; but the plaintiff was given leave to move in the trial court for an amendment of the bill with respect to the annexed copy so as to show that the statement was a sworn statement conforming to § 8.  [359-360]

BILL IN EQUITY, filed in the Superior Court on October 1, 1952.

The suit was heard by *Cahill*, J., on a master's reports.

*David R. Berg*, for the defendants Berg.

*Charles D. Sloan*, (*Samuel Thompson* with him,) for the plaintiff.

QUA, C.J.   This bill is brought by a subcontractor, hereinafter called Valentine, against the defendant principal contractor, hereinafter called Thibeault, and the defendants David R. Berg and Ethel Berg, husband and wife, the owners of real estate in Longmeadow, to establish Valentine's lien for materials furnished to Thibeault for a house to be built by him upon the Berg land for the price of $29,000.

The lien claimed is a subcontractor's lien under G. L. (Ter. Ed.) c. 254, § 4, and depends upon a recorded notice of a written contract for the materials between Valentine and Thibeault.   No lien is claimed under §§ 1 to 3 dependent upon the recording of notice of the principal contract.   In addition to the claim of lien based upon Valentine's notice as subcontractor, the bill in a separate paragraph describes a "collateral" written agreement dated July 16, 1951, among Valentine, Thibeault, and David R. Berg and alleges that David R. Berg "personally" owes Valentine and Thibeault jointly $5,000 which, with the consent of Thibeault,

will be applied in reduction of Valentine's lien against the land. In addition to prayers for the establishment of the lien there is. included a prayer for judgment on this agreement against the defendant David R. Berg in favor of the plaintiff Valentine and the defendant Thibeault.

The case was referred to a master, whose several reports were confirmed without exception or appeal, and a final decree was entered establishing a lien in favor of Valentine for an amount which is equal to the $5,000 mentioned in the so called collateral agreement plus interest. The Bergs appeal from the final decree.

For convenience we deal first with the "collateral" agreement, but without stopping to consider whether it had a proper place in a bill of this kind, since there was no demurrer, and so far as we know no objection has been made to dealing with this agreement. The principal contract between the Bergs and Thibeault was dated January 19, 1951. The subcontract between Valentine and Thibeault was dated January 24, 1951. It is plain from findings of the master that by the latter part of May the defendant David R. Berg became apprehensive that Thibeault was not paying or would not pay Valentine for the materials furnished and in substance insisted that any further payments by the Bergs to Thibeault be used on the Valentine account in reference to the Berg house. On July 12 David R. Berg wrote Valentine that he considered that all materials furnished up to June 1 had been paid for, and that upon payment for any materials furnished after June 1 he should "expect a release and discharge of the lien which you have filed." Thereupon Valentine stopped deliveries to Thibeault and progress of the work "slowed up" or "practically stopped." The agreement of July 16 was made in order that the work "could be resumed and completed." That agreement reads as follows:

"July 16, 1951

Agreement by and between David R. Berg (Owner), Robert A. Thibeault (Builder) and Valentine Lumber & Supply Company (Supplier) for valuable consideration paid

by each to the other, receipt of which is hereby acknowledged by each, as follows:

1. All agree that exact balance due Builder by Owner on construction of house at 152 Meadowbrook Rd., Longmeadow as of this day is Five Thousand Dollars ($5,000.00) which amount is to be paid after entire completion of construction, all in accordance with original plans and specifications. Builder to supply all labor and materials, except that Owner is to take care of all plumbing, concrete, heating, painting and electrical work.

2. Owner to make said payment of ($5,000.00) when due jointly to Builder and Supplier.

3. Supplier agrees that when said payment of $5,000.00 representing Owner's entire balance due on construction contract is made jointly to Builder and Supplier, Supplier will release and discharge its lien on said work and materials and consider itself paid in full as far as Owner is concerned. Supplier agrees further to supply Builder with all necessary supplies and materials for the job to enable Builder to complete work.

> /s/  David R. Berg
> /s/  Robert A. Thibeault
>      Valentine Lumber & Supply Co. Inc.
>              /s/  By R. W. Cowles"

Duplicate Original

There are several reasons why this agreement cannot be made the foundation of a lien under c. 254, § 4, or even the basis of a recovery of a personal judgment against the Bergs jointly or against either of them. (1) Ethel Berg was not a party to the agreement. (2) The agreement fixes the balance payable to Thibeault on the general contract and provides that this balance shall "when due" be paid to Thibeault and Valentine jointly, and that when such payment is made Valentine shall release its lien. But the agreement does not even purport to relieve Valentine in any way from the necessity of following in all particulars the procedure provided by statute if it should seek to estab-

lish a lien. (3) The payment of $5,000 is to be made only "after entire completion of construction, all in accordance with original plans and specifications." Entire completion was an express condition of the agreement. On November 1, the approximate date fixed for completion of the principal contract, work and materials remaining within Thibeault's contract and amounting to about $2,100 had not been performed or furnished by Thibeault and so far as appears he never completed the work.

Therefore nothing ever became due under the agreement of July 16. Accordingly the decree in so far as based upon that agreement cannot stand.

It remains to be considered whether upon the findings of the master Valentine has established a lien for any amount according to the provisions of the statute. The result of the detailed and elaborate findings of the master appears to us to be that he found a lien was proved in the amount of $2,729.80, which by adding interest from the filing of the bill, October 1, 1952, to the filing of the master's first report, August 10, 1953, became $2,870.39. The process by which this result is reached is too complicated to be restated here. We can best proceed by dealing with the several contentions made by the parties in attacking the master's conclusions.

1. We cannot accept the Bergs' contention that because the principal contract had an indefinite completion date, to wit, "shall be substantially completed on or about November 1, 1951," no lien can be established under the subcontract the completion date of which was definitely fixed as November 1, 1951. The subcontractor's lien under § 4 depends upon the subcontract and the notices given. It is not affected by an indefinite date in the principal contract. There is nothing to the contrary in *Pratt & Forrest Co.* v. *Strand Realty Co. of Lowell*, 233 Mass. 314, or *Adams & Powers Co.* v. *Seder*, 257 Mass. 453. It must be remembered that a lien is here sought under § 4 and not under §§ 2 or 3.

2. Section 4 requires "actual notice to the owner" of

the recording of the notice of contract.  Actual notice was
mailed to and received by the Bergs, but it erroneously
stated that the notice of contract was recorded on February
7 when in fact it was recorded on March 13.  We cannot
agree with the Bergs that this error was fatal.  The notice
to the Bergs was mailed March 14 after the recording of the
notice of contract.  It gave notice of the past fact of record-
ing.  By § 4 the subcontractor's lien is for labor or material
which "he shall thereafter furnish," that is, after the actual
notice.  There could be no lien for anything furnished
before this actual notice.  Therefore the error in stating the
date of recording the notice of contract seems of insufficient
consequence to destroy the lien.

3. The Bergs contend that the statement filed by Valen-
tine under § 8 did not give "a just and true account of the
amount due . . . with all just credits."  For reasons that
have already appeared the statement rightly omitted a few
items furnished before actual notice to the Bergs of the re-
cording of the notice of contract.  Items furnished before
November 1, the date set for full performance of the subcon-
tract, could be included if Thibeault owed Valentine for them
even if by the terms of the contract he was not required to
make payment until after November 1.  *General Fire Extin-
guisher Co.* v. *Chaplin,* 183 Mass. 375, 376.  The master re-
fused to allow items amounting to $533.37 furnished after
the completion date of November 1.  The reason for this
is not clear, but reading the master's reports together we
think the master disallowed these items because they were
furnished after the completion date of November 1 fixed in
the subcontract.  We think these items were properly in-
cluded in the statement.  Liens under subcontracts are not
expressly limited under § 4 by the completion date as are
liens under the principal contract by § 3, but extension of
the time for performance may be controlled by a counter
notice as provided in § 4.  It does not appear that there
was such counter notice.  Section 4 was enacted at a later
date than § 3.  See St. 1918, c. 265, § 1.  We think that the
Legislature intended to make a distinction between the two

kinds of liens. The statement was therefore not inaccurate in respect to these items. The statement leaves much to be desired in clarity, particularly in the matter of credits. The principal inaccuracy was in crediting only $1,755 out of a payment of $4,755 made on May 29, whereas $4,728.01, being enough to pay Thibeault's indebtedness to Valentine at that time on account of the Berg house, should have been credited. But the master finds on the subsidiary facts found by him that the statement was filed "as and for a just and true account of the amount due the plaintiff at the time it was filed, and that the manner in which it was set out was not wilful or with knowledge that such claim was more than was due the plaintiff." Section 11 provides that the validity of the lien shall not be affected "by an inaccuracy in stating the amount due . . . unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him." It is a fair inference that the statement was made up from Valentine's books in November shortly before it was filed. The payment of $4,755 had been made in the previous May by a check of David R. Berg payable jointly to Thibeault and Valentine. The diversion of about $3,000 to purposes other than the account on the Berg house, if it may be called a diversion, was not made by the same person who received the check, and the recorded statement of the account was made by the treasurer of Valentine and not by the person who had received the check. Only the balance of the payments, to wit, $1,755, appeared as a credit on Valentine's ledger. David R. Berg knew all the facts in relation to the payment of $4,755, and an attempt to deceive him would not be likely to succeed. We do not think we should conclude that when the statement was made up from the books and filed in November Valentine wilfully and knowingly claimed more than was due it. There is good reason to believe that it merely made a mistake. See *Hubbard* v. *Brown*, 8 Allen, 590; *Corbett* v. *Greenlaw*, 117 Mass. 167, 174–175; *Vickory* v. *Richardson*, 189 Mass. 53; *Devine* v. *Clark*, 198 Mass. 56; *Lampasona* v. *Capriotti*, 296 Mass. 34, 40; *Massachusetts*

*Gas & Electric Light Supply Co.* v. *Rugo Construction Co. Inc.* 321 Mass. 20, 24. The master has corrected the mistake.

4. Sometime after July 16 and before August 1 David R. Berg and Thibeault signed an informal contract in writing for six substituted and additional items of work producing an added cost for materials in the vicinity of $700 or $800. The Bergs contend that the lien cannot include these materials. So far as appears, however, Valentine furnished these materials under the original subcontract under which it filed its lien notice. There is no finding that it even knew of the changes. We think the cost of these materials may be included in the lien. See *Smith* v. *Norris,* 120 Mass. 58, 63. Compare *Lampasona* v. *Capriotti,* 296 Mass. 34, where, however, the lien was being enforced by the principal contractor whose contract was altered and not, as here, by a subcontractor whose contract was not changed.

5. The Bergs, however, make another contention which we think in the present state of the record must be sustained. Section 8 of the statute requires that the recorded statement of the account be sworn to by the subcontractors. The master finds that Valentine's statement was sworn to, but the copy of the statement referred to in paragraph 7 of Valentine's bill indicates that it was not sworn to. That copy has appended a form of jurat containing the date "this          day of November, 1951," and a line over the words "Notary Public," but with no signature of any notary or justice of the peace before whom any oath was taken, and there is nothing to indicate that the statement was made under the penalties of perjury (G. L. [Ter. Ed.] c. 268, § 1A, as appearing in St. 1947, c. 106), if that would be sufficient. This was not the sworn statement required by the statute. *Cook Borden & Co. Inc.* v. *Commonwealth,* 293 Mass. 174, 177, 179–181. Compare *Jackman* v. *Gloucester,* 143 Mass. 380. Valentine is bound by the allegations in its bill, including its allegation as to the form of the statement of the account. G. L. (Ter. Ed.) c. 231, § 87. *Kneeland* v. *Bernardi,* 317 Mass. 517, 519–520. *Caggiano* v. *Marchegiano,*

327 Mass. 574, 581. The result is that as the record stands no lien can be established.

But we are reluctant to decide the case on this ground, since it seems not improbable that the copy of the statement of account annexed to the bill was only an office copy and that the jurat may have been complete and in proper form on the original. The final decree will therefore be reversed, and Valentine may have thirty days from the date of the rescript in which to move in the Superior Court to amend its bill in respect to the copy of the statement of account annexed thereto as "Exhibit 'C'" so as to show that the statement was a sworn statement as required by the statute. If such amendment is allowed a new final decree is to be entered containing substantially the same provisions in favor of Valentine against Thibeault (who has not appealed) as those contained in paragraph 2 of the present decree, but with interest adjusted with a rest as of the date of the master's first report and continuing to the date of the new final decree (*Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 509), and ordering payment of the amount so ascertained. The new decree shall also establish Valentine's lien against the Berg land for the sum of $2,729.80 as found by the master in his first report, plus the items amounting to $533.37, which the master disallowed, together with interest on the entire sum of $3,263.17 to the date of the new final decree with a rest at the date of filing the master's first report. The decree may provide for costs in the Superior Court. Costs of this appeal are to be allowed in favor of the Bergs against Valentine. If the amendment above mentioned is not allowed, a new final decree shall be entered containing the provisions above referred to in favor of Valentine against Thibeault, with such costs as the Superior Court may order, but dismissing the bill as against the Bergs with costs to them against Valentine, including the costs of this appeal.

*So ordered.*