RALPH FORTE & another vs. LAWRENCE CARUSO & another.

Middlesex.    October 8, 1957. — December 11, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

Contract, Construction, Option, For sale of real estate. Option. Law or
Fact. Equity Jurisdiction, Specific performance, Plaintiff's clean
hands. Husband and Wife, Dower and curtesy. Real Property, Dower
and curtesy.

A provision of a purchase and sale agreement giving the seller an option
to repurchase the premises sold if he notified the buyer of his desire
to exercise the option "at any time during the period that the seller
continues to occupy" the premises, followed by provisions giving
him a right "to continue to occupy said premises for a period up to
six . . . months from the date of passing papers" at a certain rental
"during the time the seller continues to occupy said premises" and a
right to obtain a two year lease at an increased rental "if the seller
demands the same before the six . . . month period above referred
to expires," was not ambiguous and permitted an exercise of the re-
purchase option at any time during a continuous occupancy by the
seller after passing papers even though more than six months there-
after. [479]
The construction of unambiguous language in a contract for the sale
of real estate respecting the time within which an option to repurchase
might be exercised by the seller was a question of law in a suit in
equity against the buyer for specific performance of the agreement to
reconvey upon exercise of the option, and findings by a master as to
the intent of the parties and as to what period constituted a reason-
able time for exercise of the option were irrelevant. [481]
Sellers of real estate who elected to exercise an option to repurchase con-
tained in an unrecorded purchase and sale agreement signed by the
buyer but not by the buyer's wife were entitled to a decree for specific
performance in a suit in equity against the buyer and his wife although
shortly before exercise of the option the buyer had conveyed the
premises to his wife for a nominal consideration, "both defendants
knowing at the time . . . that the plaintiffs intended to try to secure
a reconveyance." [481]
The inchoate dower interest of a wife in real estate conveyed to her hus-
band after marriage pursuant to a purchase and sale agreement giving
the seller an option to repurchase the premises was subject to the hus-
band's equitable obligation to reconvey upon exercise of the option by

the seller; and neither the dower interest nor any inchoate curtesy interest of the husband in the premises arising when he conveyed them to his wife shortly before the seller exercised the option impaired the seller's right to a reconveyance. [481–483]

The motive of the holder of a purchase option in electing to exercise the option was irrelevant to his right to secure specific performance. [483]

Specific enforcement of an agreement by a buyer of real estate to reconvey it upon exercise by the seller of an option to repurchase it was within the usual powers of a court of equity. [483]

BILL IN EQUITY, filed in the Superior Court on January 17, 1956.

The suit was heard by *Nagle, J.,* upon a master's report. The plaintiffs appealed from a final decree dismissing the bill.

*Jacob S. Aronson, (Roy C. Papalia* with him), for the plaintiffs.

*Edward G. Sefarian,* for the defendants.

WHITTEMORE, J. This is a bill in equity seeking specific performance of an option for the reconveyance of real estate contained in a purchase and sale agreement, signed by the buyer but not by his wife and not recorded. The facts have been found by a master in a report filed March 26, 1956. The case turns primarily on the construction of the language of the option limiting the time for its exercise.

The important relevant provisions of the agreement are these: "It is agreed that the Seller has an option to repurchase said premises for the same price, plus the cost of any improvements made by the Buyer, provided the Seller notifies the Buyer of his desire to exercise said option at any time during the period that the Seller continues to occupy the premises. It is further agreed that the Seller has the right to continue to occupy said premises for a period up to six (6) months from the date of passing papers at a rental at the rate of One Hundred Ten Dollars ($110.00) per month during the time the Seller continues to occupy said premises [except for the garage attached to the main building which the buyer will have for his own use].[1] It is further agreed

---

[1] The bracketed words are not in the agreement as set out by the master, with purported full copy attached to the report. However, paragraph 3 of the bill of complaint alleges the making of the agreement and that a copy is

that the Buyer shall give a lease to the Seller if the Seller demands the same before the six (6) month period above referred to expires; said lease to run for a period of two (2) years at a rental of One Hundred Forty Dollars ($140.00) per month, and said lease shall be for the first floor, not including the garage attached."

The master found, inter alia, as follows: The plaintiffs in 1954 had taken title to the real estate, consisting of a two story building and garage, from a corporation the capital stock of which they "or either of them" owned; the corporation "has operated and continues to operate a dry-cleaning and laundry business in said premises"; the "tenancy of the plaintiffs with regard to the demised property [after the sale by them to the male defendant] commenced immediately upon the execution and delivery of the deed [that is, on May 24, 1955] and has continued uninterruptedly to the present"; rent was paid by the plaintiffs at the rate of $110 per month for the first six months of the tenancy and at the rate of $140 thereafter; notice of exercise of the option by the plaintiffs was received by the male defendant in a letter of January 10, 1956; "[i]n so far as it is a question of fact, . . . it was intended by the parties . . . that the option . . . was to remain open and continue for a period of six months from the date of passing papers"; and, also so far as it was a matter of fact, six months was a reasonable period for exercise of the option.

The master also found facts relevant to other issues presented by the appeal, as follows: On January 3 or 4, 1956, when the defendant Lawrence Caruso called to collect the rent, the plaintiff Ralph Forte said, as he had before, that the business conducted on the premises was losing money

---

annexed. The answer admits the allegations of paragraph 3, and in the copy of the agreement annexed to the complaint the bracketed words appear. Findings contrary to facts admitted in pleadings cannot be made. *Adiletto* v. *Brockton Cut Sole Corp.* 322 Mass. 110, 112. *Carson* v. *Brady*, 329 Mass. 36, 40. *Valentine Lumber & Supply Co.* v. *Thibeault*, 333 Mass. 352, 359. Both briefs state the sentence in the form found by the master; the defendants' brief shows dots of omission at the end of the sentence. Nothing turns on the variance and we therefore discuss the case as it is presented to us.

and he expected to be out by February 1, 1956; there followed an altercation about a plumbing bill after which, and as a result of it, the plaintiff Ralph indicated his intention to exercise the option; and on January 6, 1956, the defendant Lawrence conveyed the property to his wife Camilla for a nominal consideration "both defendants knowing at the time . . . that the plaintiffs intended to try to secure a reconveyance."

Following an interlocutory decree confirming the master's report, the judge in the Superior Court entered a final decree dismissing the bill, thereby, by necessary implication, ruling that the option had expired. This could have been based on a construction of ambiguity making the master's finding controlling or a construction that, without ambiguity, the option term was limited to six months.

1. We do not think that the language is ambiguous. It provides without qualification that the "Seller has an option . . . provided the Seller notifies the Buyer . . . at any time during the period that the Seller continues to occupy the premises." No other language limits this right. The two following sentences state the time within which the buyer is bound to give the sellers occupancy; they do not provide that if thereunder, or otherwise, there is in fact a continuance of occupancy, there shall be any limitation on the option stated in the first sentence.

There is redundancy in the last clause of the sentence which gives a right of occupancy for up to six months at a rent of $110 a month. It was unnecessary, and perhaps confusing, to add to this sentence the provision that $110 is the rental "during the time the Seller continues to occupy said premises." But the sentence is reasonably construable and in no aspect casts doubt on the length of the option term. Consistently with the other provisions in this sentence, it states that the $110 is payable only for so much of the six months as the premises are in fact occupied.

Nothing turns on the specification of the space to be leased. The suggestion is immaterial, if present, that after the six months the premises which might be occupied as a

right stemming from the agreement would be less in area.[1] This does not qualify the single condition of the option, that the sellers must "continue . . . to occupy the premises." The question is not presented of whether, had there been a change in the extent of occupancy after six months, it would have been of such materiality that it could be said that occupancy had not continued. There is no finding that, after the first six months, occupancy was under a lease; it is expressly found that occupancy has "continued uninterruptedly" from the time of transfer of title "to the present."

The language used may give rise to the conjecture that the parties may have, at least at some stage of negotiations or drafting, intended to limit the option to the period during which occupancy should continue under a right given in the agreement and should be occupancy to the same extent as existed at the time of transfer of title. But such suggestion, if present, does not import an ambiguity. Plain words are to be given their plain meaning where no inconsistency results or there is no controlling indication in the instrument of other intent. *Ober* v. *National Casualty Co.* 318 Mass. 27, 30. *Zarum* v. *Brass Mill Materials Corp.* 334 Mass. 81, 84. *Kelley* v. *Ryder*, 276 Mass. 24, 27. Com-

---

[1] The provision for increase in rent speaks against any material diminution of occupancy in the event of a lease, and there are indications in the agreement apart from the clause which is put therein by the pleadings but omitted in the report, see the preceding footnote, that the sellers' occupancy was at all times less than entire. The following provisions appear immediately after the three sentences discussed. "It is further agreed that the Seller shall have the right to use the driveway on said premises for parking, passageway and any uses necessary or incidental to his use of the premises while he is occupying any part thereof. It is further agreed that the Buyer shall have the right to install an entrance to the second floor in the front of the building, and also a rear entrance to the second floor at no expense to the Seller. It is further agreed that if any alterations or improvements are made by the Buyer for the benefit of the Seller, a reasonable rent increase shall be allowed therefor. It is agreed and understood that the boiler and heating equipment, new door and new windows now stored on the premises go with the building, and it is further agreed and understood that the Seller will maintain and operate the present boiler on said premises. It is further agreed that the Buyer shall have the right to install an additional heating plant for the second floor in the boiler room, and have access to the same. It is expressly understood and agreed that all office, laundry and dry cleaning equipment, furniture, machines and tools remain the property of the Seller, and may be removed by them at any time."

pare *Morse* v. *Boston,* 260 Mass. 255, 262; *Clark* v. *State Street Trust Co.* 270 Mass. 140. There is no doubt of the meaning of "continues to occupy the premises." Giving these words their plain meaning makes no other provision inconsistent, meaningless or unreasonable. In the circumstances speculation as to possible different intent is barred.

2. The construction of the agreement was for the court. *Hiller* v. *Submarine Signal Co.* 325 Mass. 546, 549–550. *Edmund Wright Ginsberg Corp.* v. *C. D. Kepner Leather Co.* 317 Mass. 581, 586. In the circumstances the findings of the master as to intent and reasonable time are irrelevant. It is apparent that the option was exercised within the time provided therefor in the agreement, and the decree below implies no findings (see *Artemis* v. *Malvers,* 322 Mass. 136, 137) which could control this conclusion.

3. Specific performance may be decreed notwithstanding the conveyance of the land to one who was not a bona fide purchaser. *Parkhurst* v. *Maynard,* 285 Mass. 59. See *Bickford* v. *Dillon,* 321 Mass. 82, 83.

4. Inchoate interests of dower or curtesy may not be asserted to impair the interest of the sellers under the option.

Camilla Caruso's inchoate right of dower was, of course, derivative from the husband's estate. He received title subject to the equitable interest of the sellers to have it reconveyed under the contract upon the exercise of the option. In *Flynn* v. *Flynn,* 171 Mass. 312, in holding that a taking by eminent domain during the lifetime of the husband cut off the wife's dower interest, we said (page 315), "There can be no doubt that the inchoate right of the wife is always subject to any encumbrance or infirmity in the husband's title existing at the time he became seised." A paramount title has long been recognized as such an infirmity. *Clark* v. *Munroe,* 14 Mass. 351 (purchase money mortgage). *Emerson* v. *Harris,* 6 Met. 475 (bona fide purchase after an unrecorded deed). *Newhall* v. *Lynn Five Cents Savings Bank,* 101 Mass. 428, 431 (mortgage to which

the deed to the husband was subject). *Flynn* v. *Flynn,* *supra.* This court in *J. J. Newberry Co.* v. *Shannon,* 268 Mass. 116, held entitled to prevail the prior equitable interest created by the husband's contract to convey made prior to marriage, even though the wife did not know of the contract. We said (page 119), citing *Dooley* v. *Merrill,* 216 Mass. 500, "The basis of the decision . . . is that no such right exists in property held by the spouse merely as a trustee; and that, in the eye of a court of equity, the person bound to convey is regarded as having done as he should . . . and so as holding as trustee for the vendee. . . . The marriage confers rights only in the property which the spouse holds beneficially at the time of the ceremony."

We see no relevant distinction between an equitable interest which is attached to the property when the husband takes title after marriage, and one which is attached to the property when marriage occurs. See *Kusch* v. *Kusch,* 143 Ill. 353, where the husband obtained title in return for an agreement to furnish maintenance. In either case, when that occurs which may give rise to a dower right, there is a prior right encumbering the husband's full beneficial ownership. See, for other cases where the husband's title acquired after marriage was subject to defeasance, *Beardslee* v. *Beardslee,* 5 Barb. S. C. 324 (title conditioned to end on nonpayment of rent); *National Holding Co.* v. *Oram,* 29 Ohio App. 138 (title under a ninety-nine year lease renewable forever conditioned on compliance with terms at option of lessor); *Sullivan* v. *Sullivan,* 139 Iowa, 679 (fee, conditioned on making certain payments).

There is of course a distinction between a legal title encumbered by an absolute obligation to convey, and a legal title encumbered by an option, — that is, a contract right to place the owner under such an obligation by a subsequent act. In the case of the option we may not regard the husband at the time he receives title as having only a bare trustee's title as described in the opinion in *J. J. Newberry Co.* v. *Shannon,* 268 Mass. 116. But we think the priority of the equity under the option is controlling, otherwise the wife

will have a greater right than existed in the husband at the moment when the derivative right attached. We think the language of *Flynn* v. *Flynn*, 171 Mass. 312, 315, should be applied to include, within "infirmity," the equitable obligation to convey upon the happening of a subsequent event, and that "the inchoate right of the wife is . . . subject to . . . [such an] infirmity in the husband's title existing at the time he became seised," with the same effect as if the infirmity were an absolute condition of record, defeating title, or an unconditional obligation to convey. The principal was applied to premarriage option contracts in *Detwiler* v. *Capone*, 357 Pa. 495, and *Matlack* v. *Arend*, 2 N. J. Super. 319. See Restatement: Property, vol. 1; appendix page 2, § 54 (read with this *Welch* v. *Brimmer*, 169 Mass. 204), § 84.

The applicability of the principle that dower is extinguished by merger with the fee interest (Tiffany, Real Property, § 534) has been said to depend on intent and not to be found where it would not be beneficial to the wife. *Estate of Danhouse*, 130 Pa. 256, 260. We need not consider the point. Here the dower interest was, equally with the husband's title from which it derived, subject to the equitable interest of the sellers under the agreement and comes to an end upon the establishment and enforcement of the sellers' equity.

Manifestly, on the same principle, no right of curtesy assertable to impair the plaintiffs' claim arose in the defendant Lawrence Caruso when he conveyed the property to his wife.

5. There is nothing in the defendants' contention that the plaintiffs are barred because of unclean hands. The spur to their decision to repurchase is irrelevant, whether it was irritation with the defendants, or the desire to make a profit, which, the defendants contend, may be inferred from findings not previously herein referred to. The option right was not limited in respect of motive.

6. The enforcement of an option agreement for the sale of property is a usual equity power. *Shayeb* v. *Holland*, 321 Mass. 429. *Nichols* v. *Sanborn*, 320 Mass. 436. The

master's report shows no facts supporting a decree dismissing the bill. The decree is reversed and a decree is to enter ordering specific performance of the agreement, with costs of the appeal to the plaintiffs.

*So ordered.*