SCIABA CONSTRUCTION CORPORATION *vs.*
CITY OF BOSTON & another[1]; DEPARTMENT OF LABOR AND
INDUSTRIES, intervener.[2]

No. 92-P-328.

Suffolk. April 14, 1993. - August 23, 1993.

Present: WARNER, C.J., ARMSTRONG, DREBEN, KAPLAN, & PORADA, JJ

*Practice, Civil,* Moot case. *Moot Question. Contract,* Bidding for contract,
Public works. *Public Works,* Bidding procedure. *Damages,* Failure to
award public works contract.

The court expressed its views on the merits of a controversy that had be-
come moot, where the matter had been briefed and argued, the issue
was of public importance and likely to arise again and evade judicial
review, and a decision would probably prevent future litigation between
the parties. [185]

---

[1]Modern Continental Construction Co., Inc.

[2]The case was initially heard by a panel comprising Justices Dreben,
Kaplan, and Porada and was thereafter submitted on the record and briefs
to Chief Justice Warner and Justice Armstrong, all of whom took part in
the decision of this case in accordance with the provisions of Mass.R.A.P.
24(a), 365 Mass. 872 (1974).

A petition for rehearing filed by the Sciaba Construction Corporation
after release of this decision questioned the recomposition of the panel in a
manner that changed the outcome of the appeal. The procedure that was
followed reflects a long-standing practice of the Appeals Court, designed to
ensure that published opinions reflect the view of a majority of the
Justices. See *Lyons* v. *Labor Relations Commn.,* 19 Mass. App. Ct. 562,
566 n.7 (1985), indicating that published opinions are considered by the
entire court prior to release. In the case of a dissent, if a majority of all the
Justices agrees with the majority of the panel, the decision is published as
a two to one decision of the original panel. If a majority of all the Justices
agrees with the dissent, the panel is enlarged to reflect the view of the
majority of the court, generally by adding to the panel the two senior
Justices who are part of the full court majority. The masthead, in such
case, shows the panel as five members, but in effect the decision is that of
the entire court. The one instance where this practice was not followed was
*Commonwealth* v. *James,* 30 Mass. App. Ct. 490 (1991), in which the
masthead listed all the Justices as members of the revised panel.

Discussion of State and Federal law with respect to minor deviations from statutory bidding requirements. [185-186]

A municipal commissioner of public works considering bids for a project correctly concluded that an obvious clerical error appeared on one of the submissions and properly awarded the contract to the lowest bidder without considering the item in which the error was made. [186-190] PORADA, J., dissenting, with whom KAPLAN, J., joined.

A disappointed bidder on a public works project was not entitled to injunctive relief, in the circumstances, for the city's inadvertent failure to follow bidding procedures, nor was it entitled to its bid preparation costs where it was not entitled to the award of the contract. [190-191] PORADA, J., dissenting, with whom KAPLAN, J., joined.


CIVIL ACTION commenced in the Superior Court Department on November 4, 1991.

After proceedings before *Barbara A. Dortch,* J., a petition seeking relief from an order denying a preliminary injunction was heard in the Appeals Court by *Kass,* J.

*John J. Spignesi* for the plaintiff.

*William J. Pidgeon, Jr.,* Assistant Corporation Counsel, for the city of Boston.

*Charles E. Schaub, Jr., & William R. Moore,* for Modern Continental Construction Co., Inc., submitted a brief.

*L. Scott Harshbarger,* Attorney General, *Peter Waltonen & Sheila L. Morton,* Special Assistant Attorneys General, for the intervener, submitted a brief.

DREBEN, J. Sciaba Construction Corporation (Sciaba) filed suit in the Superior Court against the city of Boston (city) and Modern Continental Construction Co., Inc. (Modern), seeking preliminary and permanent injunctions to prevent the city from awarding a contract for the repair of the North Washington Street Bridge to Modern on the ground that the award would be in violation of G. L. c. 30, § 39M,[3] the stat-

---

[3]General Laws c. 30, § 39M, as appearing in St. 1984, c. 484, § 35, provides in relevant part as follows:

"(*a*) Every contract for the construction, reconstruction, alteration, remodeling or repair of any public work . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read . . . provided, however, that such awarding authority may reject any and all bids, if it is in the public interest to do so."

ute governing competitive bidding procedures on public works projects. The Department of Labor and Industries (department) was allowed to intervene as a party plaintiff.[4] A judge of the Superior Court denied the application for a preliminary injunction as did a single justice of this court upon Sciaba's petition for relief under G. L. c. 231, § 118, first par. Sciaba then filed this appeal under the second paragraph of G. L. c. 231, § 118. We agree that no injunction should have issued.

The facts are not in dispute. The city solicited competitive bids for the repair of the North Washington Street bridge pursuant to G. L. c. 30, § 39M. Each bidder was required to list separate prices for the various categories of work to be performed. For each item for which a quantity was listed by the city, the bidder was to specify a unit price in both words and figures and to compute the extended bid price by multiplying the unit price by the estimated quantity. The bidder was also required to provide a total bid price by adding the various extended bid prices.

Upon opening the bids on September 19, 1991, the three lowest bidders were as follows:

| Modern Continental Construction | $2,287,950. |
| Sciaba Construction Corporation | $2,338,200. |
| N.E.L. Corp. | $2,655,462. |

Modern's bid contained an error in item No. 860.04 for the painting of a four-inch, reflectorized white line. While Modern listed a unit price of fifteen dollars in words and figures for an estimated quantity of 6,400 linear feet, its extended price was $960, a figure that was also reflected in Modern's total bid price. See note 5, *infra*.

---

[4]The department had earlier determined that under G. L. c. 30, § 39M, the city was required to reject Modern's bid and award the contract to Sciaba as the lowest responsible and eligible bidder. The determination of the department is not entitled to special weight in the "de novo" proceedings in the Superior Court. See *Department of Labor & Indus.* v. *Boston Water & Sewer Commn.*, 18 Mass. App. Ct. 621, 623-624 n.7 (1984).

.

The bid package furnished by the city to all bidders provided: "In case of a discrepancy between the prices written in words and those written in figures, the written words shall govern. In the event there is a discrepancy between the unit prices and the total sum of all the Items, the unit prices shall govern." If this formula had been applied, Modern's total bid price would have been based on a figure of $96,000 (6,400 x $15) for the white line, and Sciaba claims it would have been the lowest bidder.

Based upon the prices for the item quoted by Sciaba (twenty-five cents per linear foot) and the other low bidder, N.E.L. Corp. (twelve cents per linear foot), and the city's own estimate of ten cents per linear foot, the city's commissioner of public works concluded that Modern had made an obvious clerical error in its bid. For this reason he declined to apply the formula. Instead, relying on another provision in the bid specifications that reserved to him "the right to reject any and all proposals, or any Item or Items of the proposal should he deem it to be for the best interest of the City so to do," the commissioner rejected all bids for the painting of the reflectorized white lines.

The commissioner then awarded the contract to Modern, basing his decision on the following grounds: (1) the painting of the lines involved very minor work not directly connected to the main purpose of the contract, and it could easily be performed by a separate service order or by the city itself; (2) the dollar amount of the repair work was insignificant in relation to the total contract, representing a mere .03% of the entire project; (3) Modern's unit price was, on its face, an obvious clerical error; and (4) the rejection of all bids for this item would prevent an unnecessary expenditure of approximately $50,000 in public funds (the difference between Modern's and Sciaba's bid).

When notified of the city's decision, Sciaba filed a protest with the department, and, when advised that the city would ignore the department's determination in Sciaba's favor, see note 4, *supra*, Sciaba filed this action. It now appeals from the denial of a preliminary injunction.

Since the contract has been awarded and the bidding documents provided that the work was to be completed "within 180 consecutive days," there is presently nothing to enjoin. Accordingly, the appeal from the denial of the application for a preliminary injunction is moot. See *Utility Contractors Assn. of New England, Inc.* v. *Department of Pub. Works*, 29 Mass. App. Ct. 726, 729 (1991). Nevertheless, as (1) the matter has been briefed and argued at some length, the issue is one of public importance and is likely to arise again in similar factual circumstances and is likely to evade judicial review, and (2) a decision will probably prevent further litigation between the parties as to bid preparation costs, we consider it appropriate to express our views on the merits of this controversy. See *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141-142 (1975).

While strict adherence to statutory bidding requirements is required in matters of substance, *Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. 252, 258 (1956); *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. 503, 505-506 (1968), and this is so even in cases where the violation benefits the public, *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 692 (1982), minor deviations from statutory bidding requirements do not compel rejection of the bid or invalidation of a contract.

Absent other considerations, an obvious clerical error that deceives no one does not require rejection of a bid. *Fred C. McClean Heating Supplies Inc.* v. *School Bldg. Commn. of Springfield*, 341 Mass. 322, 324 (1960). Thus, in that case the court held that the obvious clerical error of a bidder (West Side) in placing the figure for a deduction in "Alternate A" and writing "none" in "Alternate B," when the figure should have been placed in "Alternate B," did not compel rejection of the bid. The petitioner had relied on G. L. c. 149, § 44H, which requires rejection of every subbid "which is on a form . . . which is incomplete, . . . or which contains any addition not called for." Rejecting the petitioner's claim that the subbid was "incomplete" since there was no figure for "Alternate B" and that it contained an "addition not

called for" by reason of the presence of a figure in "Alternate A," the court, at 324, stated, "The legislative intent to protect the public (*Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. 252, 258) does not require that § 44H be given the harsh and unreasonable construction which would be necessary to strike down the West Side subbid." Similarly in *DiMinico & Cincotta, Inc.* v. *Fire Commr. of Boston*, 346 Mass. 766 (1963), the court held that a bid was not "incomplete" and could be accepted even though a requested figure for the amount to be charged by the general contractor had been omitted. The bidder was required to list in item 1 all the charges of the general contractor, in item 2 the charges of the subcontractors, and to compute the total charges. Since the difference between item 2 and the total amount was readily ascertainable and that difference "obviously" covered all the work of the general contractor, the omission was held not to be a matter of substance. See also *John D. Ahern Co.* v. *Acton-Boxborough Regional Sch. Dist.*, 340 Mass. 355 (1960); *Grant Constr. Co.* v. *New Bedford*, 1 Mass. App. Ct. 843 (1973); *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. 112, 115 n.5 (1984).

Federal executive agencies also permit the correction of clerical errors, albeit by explicit grant of authority. Congress enacted Pub.L. 93-400 with the purpose of establishing an office "to provide overall direction of procurement policies, regulations, procedures, and forms for executive agencies." 41 U.S.C. § 402(b) (1988). A regulation under the act, 48 C.F.R. § 14.406-2 (1992), provides: "Any clerical mistake, apparent on its face in the bid, may [with certain qualifications] be corrected by the contracting officer before award." (An example of such an error given in the regulations is "[o]bvious misplacement of a decimal point.") See also 48 C.F.R. § 4.405 (1992) which is the analog of our rule that minor or technical, as contrasted with substantive, deviations do not require invalidation of a bid.

An analysis of the bid documents submitted by Modern and the other low bidders leaves no question that the city's

commissioner of public works was correct in concluding that an obvious clerical error was made. That Modern's intended price was fifteen cents and not fifteen dollars was apparent both from the face of the bid,[5] from the other low bids for the same work ($.25 and $.12 per linear foot), and from the city engineers' estimate ($.10 per linear foot).

Sciaba also claims that the city's decision to delete the item was based exclusively on extrinsic evidence and that *Gifford* v. *Commissioner of Pub. Health*, 328 Mass. 608, 615 (1952), precludes the use of such evidence. That the city's conclusion was based solely on extrinsic evidence is refuted by note 5, *supra*, showing that the error was apparent on the face of the bid. Moreover, Sciaba's reliance on *Gifford* to conclude that the city could not take the other bids or the estimates of its own engineers into account is misplaced. The evidence excluded in *Gifford* was "private, confidential or se-

---

[5]The following chart is taken from Modern's bid form containing the error in item No. 860.04.

| ITEM NO. | QUANTITY | ITEM WITH UNIT BID PRICE WRITTEN IN WORDS | UNIT PRICE DOLLARS | CENTS | AMOUNT DOLLARS | CENTS |
|---|---|---|---|---|---|---|
| 860.04 | 6,400 | 4 IN. REFLECTORIZED WHITE LINE (PAINTED) AT FIFTEEN DOLLARS PER LINEAR FOOT | 15 | - | 960 | - |
| 866.04 | 4,700 | 4 IN. REFLECTORIZED WHITE LINE (THERMOPLASTIC) AT FORTY CENTS PER LINEAR FOOT | 0 | 40 | 1880 | - |
| 867.04 | 2,100 | 4 IN. REFLECTORIZED YELLOW LINE (THERMOPLASTIC) AT FORTY CENTS PER LINEAR FOOT | 0 | 40 | 840 | - |
| 868 | 100 | GORE LINES - REFLECTORIZED WHITE (THERMOPLASTIC) AT ONE DOLLAR THIRTY CENTS PER SQUARE FOOT | 1 | 30 | 130 | - |

The discrepancy between $15 and the price per linear foot for the other kinds of lines (even if not known to be more expensive than the painted ones), when coupled with the total price of $960 (.15 X 6,400), leads even a layperson, let alone the commissioner of public works, to conclude that the fifteen dollar figure was a clerical error and that $.15 was intended.

cret communication between the subcontractor and the general contractor." *Ibid.* What the general contractor wanted to show was that an item, an allowance for fabric, that should have been included in the subbid was included in the work to be performed by the general contractor. The evidence that the allowance was not included in the subbid "was given only to the [general contractor] and was not filed with the department" of public health with whom the subbids had to be filed. Similarly, the fact that the general contractor included the item in the work it was to provide was not evident from any of the bid documents and was only shown through the testimony of the general contractor. In those circumstances, the court held that, after filing, a subbid could not be changed by secret communication and that no form of testimony, written or oral, could be received to show that the bid of the general contractor had some meaning not ascertainable on its face.

In contrast, in this case, the so-called "extrinsic" evidence of the other bids was before the city at the time of the opening of the bids. Such evidence and the estimates in its own files from its engineers could be used by the city in determining that Modern's bid contained a clerical error. Contrary to Sciaba's contention, there is no basis for challenging that determination. See *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham*, 330 Mass. 494, 496 (1953).[6]

The question next arises whether the contract provision concerning discrepancies precludes the result reached by the authorities cited earlier involving clerical errors. The clause, as will be remembered, provides: "In the event there is a discrepancy between the unit prices and the total sum of all the Items, the unit prices shall govern."

Just as the court in *Fred C. McClean Heating Supplies* v. *School Bldg. Commn. of Springfield*, 341 Mass. at 324, rejected the literal and "harsh" construction of the *statute* as "unreasonable," we reject the literal and harsh construction

[6]Under the rule of *Gifford*, the affidavit of the senior estimator of Modern and his worksheets were not admissible in the trial court. Nevertheless, their admission, if objected to, was harmless error.

of the *contract* clause, sought by Sciaba.[7] There is a difference between obvious clerical errors and situations where there is an ambiguity and the contracting authority cannot determine the amount of the bid. The contract clause is meant to apply when an aid to interpretation is needed to understand the bid and not when the intent of the bidder is, as here, apparent.[8] To construe the clause in this manner does no violence to the legislative purpose of the bidding statute "to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally." *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. at 692.

Because we consider this case to fall within the narrow class of cases permitting the correction of obvious clerical errors that deceive no one, it follows that the city was entitled to award the contract to Modern. The city, however, did not do so directly but first omitted item No. 860.04, relying, as we previously indicated, on the provision in the bid documents allowing the commissioner of public works "to reject . . . any Item or Items of the proposal should he deem it to be for the best interest of the City. . . ." That reliance, however, seems questionable under the reasoning of *Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. at 258.

In that case the awarding authority had awarded the contract to the lowest general contractor but had deleted from

---

[7]Where the deviation is "not from a statutory requisite but rather from a requirement imposed by the authority," the awarding authority has even more discretion. See *Peabody Constr. Co.* v. *Boston*, 28 Mass. App. Ct. 100, 104 (1989).

[8]An analogous distinction is found in the bidding context where an official bid form contains a provision that bidders "will not be released on account of errors," or contains a clause that a bidder may not withdraw a bid. In such cases, courts recognize a difference "between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. . . . Generally, relief (rescission) is refused for errors in judgment and allowed only for clerical or mathematical mistakes." *M.F. Kemper Constr. Co.* v. *Los Angeles*, 37 Cal. 2d 696, 703 (1951).

the scope of the work a subbid for acoustical tile ceilings included in the general contractor's bid. The subbid had been based on acoustical material that did not meet the bidding specifications. The statute governing bidding procedures for public buildings, G. L. c. 149, § 44A (now G. L. c. 149, § 44E), contained the same proviso as G. L. c. 30, § 39M, see note 3, *supra*, namely, that the awarding authority may reject any and all bids, if it is in the public interest to do so. Despite the proviso, the court invalidated the contract award, saying:

> "The provision for rejecting bids is not intended as a device to be adopted as part of the act of awarding a. contract so as to justify making a contract different from that submitted to competitive bidding. If, after bids are opened, the awarding authority could, either with or without negotiation with a selected general contractor, omit portions of the proposed work for reductions in price, the legislative intent to protect the public, all too easily, could be evaded. That the awarding authority, as contended here, had as one of their purposes a reduction in cost is of no consequence. Even the best of motives cannot excuse contravention of the statute" (citations omitted). 334 Mass. at 258.

The same reasoning applies to the bidding procedure under G. L. c. 30, § 39M. See *J.J. & V. Constr. Corp.* v. *Commissioner of Pub. Works of Fall River*, 5 Mass. App. Ct. 391, 392 (1977). To allow the awarding authority to rely on the clause in the bid document to change the scope of the work after the completion of the competitive bidding process would, in our view, open the door for manipulation of bids. Accordingly, the city should not have deleted the item.

There was here, however, no attempt to undermine open and honest bidding procedures or to manipulate the bid. To the contrary, the city sought to achieve punctilious compliance with its documents. In the mistaken belief that the bidding documents did not permit it to award the contract to Modern as bid — that is, with the error in item No. 860.04

— and that strict observance of the documents required it to reject, rather than to correct, the erroneous item, the city inadvertently failed to follow proper procedures. In these circumstances, the city's attempt to follow, rather than subvert, the bidding statutes in coping with an obvious clerical error is not the kind of impropriety that would warrant injunctive relief.

Sciaba is also not entitled to its bid preparation costs. *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326, 333-335 (1975), *S.C.*, 371 Mass. 235, 243 (1976). Since Sciaba was not entitled to the award of the contract and, moreover, has not shown "that the result would not have been the same" had the improper deletion not occurred, Sciaba has not shown that it "has been hurt." *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Comm.*, 338 Mass. 450, 458-459 (1959).

The appeal is dismissed because it is moot.

*So ordered.*

PORADA, J. (dissenting, with whom Kaplan, J., joins). While I agree that the appeal is now moot, I do not agree that the city's award of the contract to Modern was proper or that Sciaba should be deprived of its bid preparation costs. Unlike the majority, I view the deletion of an item in the scope of the work by the city after the completion of the competitive bidding process as a substantive deviation from statutory bidding procedures. See *Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. 252, 258 (1956); *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. 503, 505-506 (1968).

Whether a deviation is considered one of substance or a minor technicality, which does not compel rejection of the bid or invalidation of a contract, will depend on whether invalidation is necessary to fulfil the legislative purpose. *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 692 (1982). The objectives of statutory bidding procedures are "to prevent favoritism, to secure honest meth-

ods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally." *Ibid.* In determining whether the legislative purpose of the statutory bidding procedures has been thwarted in this case, the language of the *Grande* case cited in the majority opinion is particularly instructive, namely: "If, after bids are opened, the awarding authority could, either with or without negotiation with a selected general contractor, omit portions of the proposed work for reductions in price, the legislative intent to protect the public, all too easily, could be evaded." 334 Mass. at 258. While the majority agrees that the same reasoning applies in this case, they assert that the city's change in the scope of the work after the completion of the bidding process can be overlooked because the city's action was not an attempt to manipulate the bids but a desire to secure punctilious compliance with its bid documents.

I do not agree that the city's good faith is relevant to the issue before us. See *Gifford* v. *Commissioner of Pub. Health*, 328 Mass. 608, 617 (1952) (absence of bad faith or of corruption does not excuse noncompliance with the procedure established by the Legislature for the award of public contracts); *Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. at 258. I also do not agree that the city sought punctilious compliance with its bid documents. The very reason the case is before us is that the city failed to follow the procedure set forth in its bid documents for dealing with the defect in Modern's bid, which, as will be remembered, provides:

> "In the case of a discrepancy between the prices written in words and those written in figures, the written words shall govern. In the event there is a discrepancy between the unit prices and the total sum of all of the Items, the unit prices shall govern."

If this formula had been applied, Modern's price for the deleted item would have been $96,000, and Sciaba would have been the lowest bidder. The majority seeks to justify the city's action by construing the clause to apply only when an

aid to interpretation is needed to understand the bid and not when the intent of the bidder is apparent. While I do not agree that the intent of the bidder in this case is apparent, I note that the majority's reasoning ignores a basic tenet of contract interpretation, namely that "[p]lain words are to be given their plain meaning where no inconsistency results or there is no controlling indication in the instrument of other intent." *Forte* v. *Caruso*, 336 Mass. 476, 480 (1957). There appears to be no ambiguity in this clause and no reason not to give these words their plain meaning since ascribing to them their plain meaning makes no other provision inconsistent, meaningless, or unreasonable. *Id.* at 481. In these circumstances, speculation as to possible different intent is barred. *Ibid.*

Even if one were to conclude that there was some doubt as to the clause's meaning, the best evidence of intent is the city's recognition that the clause applied to the defect necessitating their deletion of the item containing the defect from the scope of the work. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. 39, 59 (1991) (conduct of the parties after signing the agreement is indicative of intent).

In sum, I conclude that the city's invalid deletion of an item in the change of the scope of the work after completion of the bidding process (a point not disputed in the majority opinion) and the city's failure to follow its own formula in its bid documents for dealing with the error in Modern's bid creates an impression of favoritism, smacks of bid manipulation, and results in disparate treatment of the submitted bids contrary to the legislative intent and spirit of statutory bidding procedures. As a result, I conclude that the preliminary injunction should have been allowed, the award of the contract to Modern was improper, and Sciaba should be entitled to recover its bid preparation costs under the authority of *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326, 333-335 (1975), *S.C.*, 371 Mass. 235, 243 (1976).