Borenstein, J.
The plaintiff, Eldorado Transportation Corp. (Eldorado), brings this action challenging the award of a 1991 Lexpress Mini-Bus contract to a former defendant, A-Connoisseur Transportation Corporation (A-Conn).[1] Eldorado alleges that the defendants, Town of Lexington (Lexington) and its Chief Procurement Officer, Richard White (White), failed to follow its bid specifications as well as the provisions of M.G.L.c. 30B in accepting and evaluating the bid of A-Conn and the bid of an additional bidder on the contract, Share-A-Ride, Inc. Eldorado further alleges that this failure by Lexington and White constitutes a breach of a settlement agreement between them entered into as a result of a dispute arising from a previous bid process on the contract. Eldorado asserts that the defendants failed to act in a fair and impartial manner contrary to public policy and seeks damages. For reasons set forth below, the Court finds for the defendants on all counts.
I.FINDINGS OF FACT
A. THE PARTIES
1. The plaintiff, Eldorado Transportation Corp., is a Massachusetts Corporation engaged in the business of providing bus transportation services with a principal place of business at 207 Folien Road, Lexington, Massachusetts.
2. The defendant, Town of Lexington, acting by and through its governing body, the Board of Selectmen, is a municipality within the Commonwealth of Massachusetts with a principal place of business at 1625 Massachusetts Avenue, Lexington, Massachusetts.
3. The defendant, White, is a natural person who at all times relevant hereto was Town Manager and Procurement Officer for the Town of Lexington.
B. THE FIRST CONTRACT BID & SETTLEMENT AGREEMENT
4. In September of 1989, the Lexington Transportation Advisory Committee (TAC), a committee established by the Lexington Board of Selectmen to advise and make recommendations to the Town Manager on transportation issues, began discussions concerning the extension of the contract for providing local minibus transportation, the Lexpress contract.
5. In February of 1990, an invitation for proposals was released by Lexington regarding the Lexpress contract.
6. Eldorado, A-Conn, Share-A-Ride and Arthur Corporation submitted proposals in response to Lexington’s invitation.
7. After reviewing and evaluating the proposals, Lexington awarded the Lexpress contract to Share-A-Ride.
8. On April 27, 1990, Lexington and Share-A-Ride entered a contract pursuant to which Share-A-Ride was to provide the Lexpress service.
9. Alleging an apparent conflict of interest as well as Lexington’s failure to follow the provisions of M.G.L.c. 30B in awarding the Lexpress contract, Eldorado challenged the award of the contract in a lawsuit against Lexington, White, and Share-A-Ride, Eldorado Transportation Corp. v. Town of Lexington, et al., Civil Action No. 90-4646.
10. The action referred to in paragraph 9 was settled by an agreement dated September 4, 1990.
11. Pursuant to the September 4, 1990 settlement agreement, Eldorado agreed to dismiss Civil Action No. 90-4646 in consideration of Lexington’s agreement to:
a) rescind the award of the Lexpress contract to Share-A-Ride;
b) deem Eldorado a responsible bidder and, in subsequent bidding processes, use only adverse information, if any, discovered after September 4, 1990;
c) rebid the Lexpress contract prior to October 1,1990 in accordance with the provisions of M.G.L.c. 30B;
d) notify the evaluation committee for the rebidding that the bringing of the first lawsuit will in no way adversely affect future bids of Eldorado;
e) notify the evaluation committee for the rebidding that Eldorado was a responsible bidder;
f) appoint a neutral observer, not employed by or affiliated with any of the parties to the lawsuit to serve as a witness to the rebidding process;
g) provide the neutral observer with duplicate copies of the bid proposals at the time of their submission;
h) award the Lexpress contract on or before October 15, 1990;
i) allow the neutral observer to open his copies of the bid proposals in the presence of interested bidders on October 16, 1990, the day after the deadline for awarding the Lexpress contract.
*174 12. In accordance with the terms of the settlement agreement and the provisions of M.G.L.c. 30B, Lexington issued a request for proposals (RFP) on September 20, 1990 that required the submission of all proposals on the Lexpress contract by 11:00 a.m. on October 5, 1990.
C. THE CONTRACT REBID
13. In accordance with M.G.L.c. 30B, White delegated the bid procurement evaluation process to Pauline Burke who had been Lexington’s transportation coordinator for the previous ten years.
14. Prior to 11:00 a.m. on October 5, 1990, proposals were submitted by Eldorado, A-Conn, and Share-A-Ride.
15. In accordance with the RFP, each bidder submitted two copies of its nonprice proposals that did not contain the amount of their bid and two copies of its price proposal that specified the amount of their offer.
16. As the nonprice proposals were to be evaluated by the evaluation committee without consideration of the price proposals, each bidder was required to submit the price and nonprice proposals in separate, sealed envelopes.
17. At 10:40 a.m. on October 15, 1990, Terry Bell submitted each of Share-A-Ride’s proposals in sealed envelopes to Lexington’s procurement officer, James McLaughlin.
18. Realizing that a photocopy and not an original had been submitted as part of the Share-A-Ride proposal, Terry Bell returned to the office of James McLaughlin.
19. Upon returning to the office, Terry Bell placed a page on the counter between herself and James McLaughlin. McLaughlin did not read the figures, although he recognized it to be a price proposal form.
20. In addition to James McLaughlin, Pauline Burke was present in her capacity as a town representative. She did not see the figures on the Share-A-Ride price proposal brought in by Bell.
21. After informing Terry Bell that he could not accept an unsealed document, James McLaughlin handed Bell an envelope and accepted the envelope from Bell after she placed the proposal inside and sealed the envelope (the “Share-A-Ride” envelope).
22. After writing “Share-A-Ride” on the outside of the envelope, James McLaughlin confirmed that the submission deadline of 11:00 a.m. had not been reached or passed by looking at his watch which he had set that morning by synchronizing it with NYNEX. The 11:00 a.m. deadline had not been reached or passed.
23. In addition to checking his watch, James McLaughlin called NYNEX and invited interested representatives from all other bidders, including Eldorado, to verify that according to NYNEX the 11:00 deadline had yet been reached or passed.
24. James McLaughlin placed the “Share-A-Ride” envelope with the package of documents to be considered by Lexington.
25. Because Lexington did not have a duplicate of the document contained in the “new” “Share-A-Ride” envelope to provide to the neutral observer, Pauline Burke consulted Town Counsel and determined that a copy of the document in the “Share-A-Ride” envelope should be made for inclusion in the neutral observer’s set of documents.
26. On October 5, 1990, pursuant to arrangements by Pauline Burke, a Town Clerk unaffiliated with the bidding process opened the “Share-A-Ride” envelope in the presence of the neutral observer, copied the document within and sealed the document and the copy in two new envelopes.
27. The unaffiliated Town Clerk placed one of the new envelopes with the Lexington set of proposals and provided the other new envelope to the neutral observer.
28. During the process of copying the document in the “Share-A-Ride” envelope, the other sealed envelopes submitted by the bidders were neither opened nor removed from either the Lexington set of documents or the neutral observer’s set of documents.
29. The opening of the neutral observer’s package on October 16, 1990 revealed that the document contained in the “Share-A-Ride” envelope was the original of a photocopy price proposal submitted during Bell’s initial visit to James McLaughlin’s office.
30. The opening of the neutral observer’s package further revealed that the price and nonprice proposals submitted to and relied upon by Lexington were identical to the price and nonprice proposals in the custody of the neutral observer.
31. The defendants acted properly within the scope of the settlement agreement by providing the neutral observer with a copy of the contents of the “Share-A-Ride” envelope.
32. There was nothing improper in the rebidding process and procedures, and the defendants violated neither the provisions of the settlement agreement nor M.G.L.c. 30B.
D. EVALUATION OF THE PROPOSALS
33. Pursuant to M.G.L.c. 30B, Richard White assembled an Evaluation Committee (Committee) responsible for examining and evaluating the bidders and their nonprice proposals according to criteria set forth in the RFP and for reporting its findings to White.
34. The Committee consisted of four members of the Transportation Advisory Committee (Sara Arnold, Sally Castleman, William Mix and Carole Sonduck), Lexington’s Chief Procurement Officer (James McLaughlin), the Town’s transportation coordinator (Pau *175 line Burke), and an independent transportation consultant (Lance Neumann).
35. At the direction of Richard White, the Committee was informed that, in accordance with the settlement agreement, the fact that Eldorado previously sued the Town was not to be considered in evaluating Eldorado’s proposal and that, absent material, adverse information discovered after September 4, 1990 relating to its inabilily to perform the Lexpress contract, Eldorado should be considered by the Committee to be a responsible bidder; therefore, Eldorado’s being considered a responsible bidder was not to be a “guarantee” of Lexington’s accepting the Eldorado bid.
36. The Committee evaluated the Share-A-Ride, A-Conn and Eldorado proposals according to the criteria established in the RFP: Condition of Fleet Vehicles, Step Height of Fleet Vehicles, Condition of Non-Fleet Backup Vehicles, Vehicle Maintenance Program, Management and Organization, Personnel, Depth of Relevant Experience, Quality of Experience, Professionalism and Financial Stability.
37. Each bidder was rated either (a) not acceptable, (b) not advantageous, (c) advantageous or (d) highly advantageous in each of the aforementioned categories.
38. In making these evaluations, the Committee relied upon the following sources of information: analysis of the submitted proposal documents, inspection of the proposed vehicles, inspection of the contractor’s facilities, review of maintenance records, verification of references, interviews with the proposer, the Town’s previous experience with the offeror, and other sources such as the Town’s financial officer.
39. Based upon the nonprice proposals, the Committee determined that each of the bidders was responsive and responsible, rated Share-A-Ride highly advantageous while rating both Eldorado and A-Conn advantageous and expressed a preference for Eldorado over A-Conn.
40. A comparison of the price proposals revealed that A-Conn’s bid of $822,510 was $62,920 lower than Share-A-Ride’s bid of $885,430[2] and $95,735 lower than Eldorado’s bid of $918,245.[3]
41. Richard White found each of the three bidders, Eldorado, A-Conn and Share-A-Ride, to be responsive and responsible.
42. After reviewing both the price and nonprice information submitted by bidders and concluding that the substantial price disparity outweighed the difference in nonprice ratings, Richard White awarded the Lexpress contract to A-Conn.
E. A-CONNOISSEUR’S PROPOSAL
43. The financial statement submitted by A-Conn was accompanied by a signed statement by the company’s vice-president that “warrants and represents that the foregoing information [i.e., all information submitted in connection with the proposal] is complete and accurate.”
44. The Committee concluded that the financial information submitted by A-Conn indicated financial instability but satisfied the minimum requirements of the RFP.
45. In evaluating the financial information of A-Conn, Pauline Burke having no experience reviewing financial statements relied upon the Town’s assistant comptroller’s review of the documents while Lance Neumann who has extensive experience in reviewing financial information relied on his own review of the financial statements.
46. Although it incorrectly stated that its net worth was the same as its total assets, the balance sheet submitted by A-Conn specified its assets and liabilities in detail.
47. Despite its detection of the incorrect statement of net worth, the Committee was able to determine from the balance sheet that A-Conn’s assets exceeded its liabilities, and therefore, satisfied the minimum requirements set forth in the RFP.
48. Section V of the nonprice proposal form contains two sections, a certificate of noncollusion and a certificate of tax compliance.
49. The certificate of noncollusion requires the “name of person signing proposal,” and Eric A. Gibbs, A-Conn’s vice-president and preparer of the proposal, typed his name in that section.
50. The certificate of tax compliance calls for the signature of the corporate officer, and Eric Gibbs signed his name in that section.
51. The Committee properly concluded that A-Conn was a responsive and responsible bidder on the Lexpress contract.
F. SHARE-A-RIDE PROPOSAL
52. As called for by the RFP, Share-A-Ride submitted its original price proposal to James McLaughlin prior to the 11:00 a.m. deadline on October 5, 1990.
53. The original price proposal of Share-A-Ride which was contained in the “Share-A-Ride" envelope was identical to the photocopied price proposal submitted on Terry Bell’s initial visit to James McLaughlin’s office.
54. As a complete, audited 1990 financial statement was not then available, Share-A-Ride’s financial information included a draft of its 1990 audited financial statement.
55. The Share-A-Ride proposal also included its complete, audited 1989 financial statement and an explanation that the final 1990 audited financial statement was not yet available.
56. The financial statements submitted by Share-A-Ride were accompanied by a signed statement by the company’s president that “warrants and repre *176 sents that the foregoing information [i.e. all information submitted in connection with the proposal] is complete and accurate."
57. The financial statements submitted by Share-A-Ride were in conformity with the terms of the RFP which required the most recent audited or sworn to financial statement and a supplemental statement if the audited statement was more than six months old.
58. The Committee properly concluded that Share-A-Ride was a responsive and responsible bidder on the Lexpress contract.
G. ELDORADO’S PROPOSAL
59. Although the RFP required each bidder to submit proposals with complete vehicle specifications, Eldorado’s proposal did not include specifications on its choice of options for fare boxes and tally counters.
60. Despite the absence of complete vehicle specifications from Eldorado’s proposal, the Committee properly concluded that Eldorado was a responsive and responsible bidder on the Lexpress contract.
H. ALLEGED BIAS OF EVALUATORS
61. Pauline Burke and James McLaughlin checked submitted and unsubmitted references that they believed would have relevant experience with Eldorado and Share-A-Ride.
62. Burke and McLaughlin also contacted a reference obtained from another member of the Committee who had personal knowledge that .Eldorado had performed services for the reference.
63. The contacting of references by Burke and McLaughlin was consistent with their duty to investigate and consider all relevant information in evaluating the bids.
64. Paragraph three of the settlement agreement prohibiting the Committee from considering adverse information about Eldorado unless the information was discovered subsequent to September 4, 1990 was not violated by Burke or McLaughlin’s contacting Eldorado references other than those provided by Eldorado in its proposal.
65. Eldorado has failed to demonstrate that the actions of Burke and McLaughlin were improper or undertaken in bad faith.
66. Eldorado has failed to demonstrate that Burke and McLaughlin improperly biased the other Committee members against Eldorado.
67. The evaluators performed their tasks independently and evenhandedly with regard to each bidder.
CONCLUSIONS OF LAW
68. Pursuant to M.G.L.c. 30B §6(g), the Town was to award the Lexpress contract to the most advantageous proposal “from a responsible and responsive offer taking into consideration price and the evaluation criteria set forth in the Request for Proposal.”
69. Generally, minor deviations from the bidding process are not sufficient cause to render the entire process void.
70. Minor informalities are defined by M.G.L.c. 30B §2 as “minor deviations, insignificant mistakes, and matters of form rather than substance of the bid, proposal or contract document which can be waived or corrected without prejudice to other offerors, potential offerors, or the governmental body.”
71. M.G.L.c. 30B §5(f) provides that the procurement officer “shall waive any minor informalities or allow the bidder to correct them.”
72. M.G.L.c. 30B §5(e) provides that for procurement of services of more than $10,000 an evaluation criteria must be established and bidders rated according to a composite rating system that is expressly set forth in the RFP.
73. The statutory presumption set forth by M.G.L.c. 30B §6(h) that the lowest bidder be awarded the contract absent a stated, valid reason for selecting a higher bidder establishes a requirement that a bid not be disqualified from consideration on technical grounds so as not to deprive taxpayers of the most financially advantageous contract. See Sciaba Construction Corp. v. Boston, 35 Mass.App.Ct. 181, 184 (1993), holding that a city may correct an obviously incorrect subbid in order to obtain the most favorable, overall price.
74. All minor deviations which are nonstatutoiy in nature, but depart from the requirements imposed by the contracting authority may be waived at the discretion of the authority. See Peabody Construction Co. v. Boston, 28 Mass.App.Ct. 100, 104 (1989), addressing bidder’s failure to meet city bid requirement of submitting certification that subcontractor performing a certain portion of the work is minority owned; J.J.&V. Construction Corp. v. Commissioner of Public Works of Fall River, 5 Mass.App.Ct. 391 (1977), failure to meet city requirement that certification of bidder regarding equal employment opportunity accompany all bids; Gil-Bern Construction Corp. v. Brockton, 353 Mass. 503, 506-07 (1968), failure to meet city requirement that a network analysis of construction progress schedule be submitted.
75. A requirement included in an invitation for bids or RFP is nonstatutoiy in nature if the particular requirement was not required by statute. Gil-Bern Construction Corp. v. Brockton, 15 353 Mass. 503, 506 (1968).
76. Although M.G.L.c. 3OB requires the establishment of evaluation criteria which are to be set forth in the RFP, the RFP requirements requiring the submission of financial statements are nonstatutoiy and may be waived at the discretion of the Town.
77. As he considered the marginal difference in the ratings given each bidder by the evaluation committee who determined the ratings by applying criteria set *177 forth in the RFP and then reached his decision of which bidder should be awarded the Lexpress contract after considering the difference in the price of each proposal, Richard White acted within his discretion as Chief Procurement Officer as mandated by M.G.L.c. 30B §6(g).
78. The specific evaluation criteria involving the submission by the bidders of financial statements and vehicle specifications are nonstatutory, and as such, departure from the fulfillment of these criteria may be waived at the discretion of the Town.
79. A-Conn’s failure to swear to its financial statement and Share-A-Ride’s failure to submit a sworn supplement to its audited financial statement did not require the Town to reject their proposals.
80. A contracting authority may also choose to correct apparent arithmetic errors; “an obvious clerical error that deceives no one does not require the rejection of the bid.” Sciaba Construction Corp. v. Boston, 35 Mass.App.Ct. 181, 185, (1993); Fred C. McLean Heating Supplies, Inc. v. School Bldg. Commission of Springfield, 341 Mass. 322, 324 (1960).
81. A-Conn committed an obvious and clerical error of arithmetic in its financial statement by misstating its net worth, but this did not require the Town to reject its proposal.
82. A-Conn’s error of arithmetic was apparent from the face of the document, was detected by the members of the Committee, and was calculable from the figures included within the document.
83. A signature consisting of a person’s typewritten name is sufficient where it is evident that the person intended the typewritten name to authenticate the paper as his act. Irving v. Goodimate Co., 320 Mass. 454, 459 (1946).
84. The requirement that the certifícate of noncollusion be signed was satisfied when Eric A. Gibbs, A-Conn’s Vice President and the person who prepared A-Conn’s proposal, typed his name on the certificate.
85. The irregularities in the bidding process cited by Eldorado including the absence of handwritten signatures and the events involving the “Share-A-Ride” envelope constitute matters of form that did not prejudice other bidders, and as such, were minor informalities within the meaning of M.G.L.c. 30B requiring waiver under M.G.L.c. 30B §5(F).
86. The original of the price proposal contained within the Bell envelope was an exact duplicate of a photocopied document which had previously been submitted in the Share-A-Ride bid.
87. The addition of the original price proposal did not alter or amend the previously submitted Share-A-Ride bid.
88. The addition of the original Share-A-Ride price proposal was an attempt by the Town to satisfy the requirements of the RFP.
89. The Court finds that in all respects that the defendants did not violate the provisions of M.G.L.c. 30B.
H. COMPLIANCE WITH THE SETTLEMENT AGREEMENT
90. The Court finds that the Town met all deadlines set out in the settlement agreement.
91. The Court finds that as required by paragraph three of the settlement agreement the Town deemed Eldorado a responsible bidder.
92. The Court finds that the Town did not include in the RFP evaluation criteria or requirements which would exclude Eldorado from consideration for the Lexpress contract.
93. The Court finds that Richard White as the Town’s Chief Procurement Officer in accordance with the settlement agreement notified members of the Committee who evaluated the bid proposals of the Lexpress contract that the lawsuit filed by Eldorado with respect to the first Lexpress bid process must not be considered in evaluating Eldorado’s proposal.
94. The Court finds that the defendants did not consider Eldorado’s prior lawsuit in evaluating Eldorado’s proposal in question here.
95. The Court finds that in accordance with the settlement agreement a neutral observer held duplicate copies of all proposals and opened his copies of the proposals in the presence of interested bidders on October 16, 1990.
96. As the alleged irregularities in A-Conn’s and Share-A-Ride’s proposals were minor informalities which the Town was either obligated to or had discretion to waive, the Town complied with both M.G.L.c. 30B and the settlement agreement in awarding the Lexpress contract to A-Conn.
97. The Court finds that the defendants complied with the provisions of both M.G.L.c. 30B and the settlement agreement.
98. As the Court finds that the defendants neither acted in bad faith nor wrongfully deprived Eldorado of the 1991 Lexpress contract, Judgment is to enter for the defendants on all claims by the plaintiffs.

Subsequent to the filing of this action, A-Connoisseur voluntarily dissolved. The parties have entered into a' stipulation of dismissal as to A-Connoisseur.

Share-A-Ride submitted two bids, one for metal vehicles and another for fiberglass vehicles. As the Town concluded that metal vehicles were unsuitable, this price is Share-A-Ride’s price bid for fiberglass vehicles.

The overall price was determined by Richard White who multiplied the submitted, hourly bids for each of the three years of the contract term by the 9,680 estimated hours of service to be provided in each of the contracted years.